M. D. ROWE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. M. D. ROWE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. C. COLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. W. C. COLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9063, 9064, 9133, 9134.   Promulgated August 1, 1927.

Upon the evidence, held, that the petitioner kept its books and reported its income on the cash receipts and disbursements basis, and minor deviations therefrom do not thereby cause books to be placed on the accrual basis to reflect true income.

*Harry C. Weeks, Esq.,* for the petitioners.
*Thomas M. Wilkins, Esq.,* for the respondent.

108346°—28——60

These proceedings result from determinations by respondent of deficiencies in income tax for the calendar year 1920, as follows: M. D. Rowe, $5,215.67; Mrs. M. D. Rowe, $5,215.67; W. C. Cole, $1,068.38; Mrs. W. C. Cole, $1,068.38. Upon motion made and granted, all proceedings were consolidated for hearing and decision.

Petitioners aver errors were committed with reference to the following issues: (1) The net income of the partnership of Rowe Drilling Co. was erroneously determined by the respondent on the accrual basis for 1920, in lieu of the cash basis on which the books were kept, with a resulting overstatement of income; (2) the net income of the partnership of Norton & Cline was incorrectly determined with resulting overstatement of the taxable income to M. D. Rowe and to Mrs. M. D. Rowe, from that source. It was stipulated by the parties that the second issue should be controlled by our decision to be rendered in the *Appeal of W. D. Cline*, Docket 6930, heard on January 27, 1927, and wherein the question at issue was the determination of the net income of the partnership of Norton & Cline.

In his answer to the appeals of M. D. Rowe and W. C. Cole, the respondent averred error had been committed by him since one-half of the net income had been allocated to the respective wives on the community property basis. The issue was abandoned at date of hearing.

### FINDINGS OF FACT.

The petitioners are individuals residing at Wichita Falls, Tex. W. C. Cole and Mrs. W. C. Cole are husband and wife, as are M. D. Rowe and Mrs. M. D. Rowe.

During the year 1918, a partnership, known as the Rowe Drilling Co., was organized by M. D. Rowe, W. C. Cole, Oscar Fisher and F. G. Webb. In the fall of 1918, Fisher and Webb retired and the partnership was continued under the same name by Rowe and Cole; during the year 1920, each owned a one-half interest therein. The Rowe Drilling Co. was engaged in the business of drilling oil wells by contract. The contracts were either on the so-called "straight" basis of furnishing the necessary labor and drilling equipment at a fixed price per foot of depth, or on what was termed a "turn-key job," wherein the driller undertook to furnish all materials, supplies, equipment, and labor, necessary to complete a well of a specified depth, for a lump sum. On either basis, payment was not due until completion of the contract and if the driller was unable to complete the well, the loss fell on him. Ordinarily, drilling operations are characterized by claims for extra compensation and disputes frequently arise over such charges so that it is the exception where the driller receives payment for the full amount of the bill as rendered

This partnership has always kept its books on the basis of cash receipts and disbursements and no attempt to change the basis was ever contemplated. Its Federal income-tax returns for 1918, 1919, and 1920, were made on a cash basis and the Commissioner has never been requested to grant permission to change this basis. The books and the returns were under the supervision of a public accountant.

A contract, known as the " Larrimore " well, was completed before the end of the calendar year 1918, and a payment amounting to $12,000 due thereon was reported as income in 1919, when the cash was received.

At the end of 1919, there was owing to the Rowe Drilling Co. a bill amounting to $12,366 covering drilling for Chennault Rowe & Co. during 1919, and which account receivable was entered on the books and reported on the tax return as income for 1919, under the doctrine of constructive receipt due to the financial responsibility of the debtors and the ownership of an interest in the debtor partnership by M. D. Rowe, one of the partners in Rowe Drilling Co. The cash for this bill was received on January 9, 1920.

The books of the Rowe Drilling Co. showed accounts receivable amounting as follow: on December 31, 1918, $4,303; December 31, 1919, $16,367.68; December 31, 1920, $4,161.05; and liabilities as follow: December 31, 1918, overdraft at bank, $3,648.93; accounts payable, $470.03, notes payable, $14,000; December 31, 1919, nil; December 31, 1920, notes payable, $5,000. The accounts receivable on the books December 31, 1918, included $600 cash advanced F. G. Webb (a former partner) and an item of $3, due from the Gulf Production Co., of which there is no detailed information. The accounts payable on the books December 31, 1918, comprised credits to the accounts of W. C. Cole and a Mr. Wood, for cash advanced out of their personal funds used to pay partnership bills, totaling $470.03. The accounts receivable on the books December 31, 1919, included the following: Chennault Rowe & Co., for drilling completed in 1919, $12,366; T. J. Lee and others, cash advanced for small supply bills, $41.25; J. I. Sibley, for day work and expenses, $700 (a disputed item for extra work) ; T. J. Lee and others, charged in error, $3,260.47; Rowe and Kendrick, cash advanced for miscellaneous items, $40. The accounts receivable on the books December 31, 1920, included the following: T. J. Lee and others, balance forwarded for supply bills, $41.25; T. J. Lee and others, $3,329.80 (being previous balance plus supplies bought for them) ; M. D. Rowe, $190 for a rig purchased from him; J. I. Sibley, old disputed balance, $700.

In 1920, M. D. Rowe held a one-fifth interest in a partnership known as the Cline Oil Co., and it was for this partnership that the Rowe Drilling Co. drilled six wells in 1920, including three or four

wells drilled near the close of the year. Five wells were drilled for other parties. The account of the Cline Oil Co. on the books of the Rowe Drilling Co. showed for 1920, total charges of $81,531.15 and credits for payments totaling $60,536.85. The charges included sales of equipment and in entering them on the books, credits were carried to asset accounts as follow: boilers, $2,360, credited to tool and equipment account; automobile, $1,795, credited to automobile investment account; shack, $425, credited material and supplies account. None of the cash payments credited to the Cline Oil Co. can be identified as being specifically for the boilers, automobile and shack. As of the end of the year 1920, the balance unpaid by Cline Oil Co., amounting to $20,994.30, was debited to drilling account and credited to Cline Oil Co. account, with the following explanation on the journal:

We make the above entry for the reason Cline Oil Company still owes this amount and we make our income tax return on cash receipts and disbursements basis. See reversed entry on page twenty-seven (27).

After closing the books for 1920, an entry was made on the books for 1921, charging the Cline Oil Co. with the amount of the unpaid balance, $20,994.30. This account, together with additional charges in 1921 for Parker Well #2, $6,012, completed in 1920, and Parker Well #3, $9,921, completed in 1921, was closed out during 1921 by the payment of various sums in cash and a promissory note for $10,000.

It was the custom of the Rowe Drilling Co. to pay their bills promptly each month. Expenses incurred in 1919 were paid in January, 1920, amounting to $7,940.46, and were deducted from income in 1920.

Operations for 1921 were greatly curtailed and but one well was drilled in that year. The gross income according to the books, for 1921, from drilling, amounted to $36,127.30, which amount included the balance of $20,994.30 unpaid at the end of 1920 by the Cline Oil Co., and the charge of $6,012 entered January 2, 1921, for Parker Well #2, completed in 1920. The expenses charged on the books in 1921 amounted to $11,724.34.

Respondent added to net income for 1920 the unpaid balance of Cline Oil Co., $20,994.30, and the charge entered in 1921 for Parker Well #2, $6,012, or a total of $27,006.30, as representing income which should have been accrued on the books on December 31, 1920.

Inventories were not necessary and were not used in the computation of net income.

OPINION.

MILLIKEN: The only issue involved in this proceeding relates to the net income for the calendar year 1920, of a partnership known as the Rowe Drilling Co. The respondent, in adjusting the partner-

ship return to the accrual basis, contends that the books were actually maintained on that basis, and, furthermore, such basis is necessary to clearly reflect income. If this action of the respondent was not in error, the mathematical accuracy of his adjustments is not disputed.

The Revenue Act of 1918, insofar as material to the issue, provides:

SEC. 212. (a) That in the case of an individual the term "net income" means the gross income as defined in section 213, less the deductions allowed by section 214.

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

      *      *      *      *      *      *      *

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

  *  *  * The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; * * *

SEC. 218. (a) That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the fiscal or calendar year upon the basis of which the partner's net income is computed.

The partner shall, for the purpose of the normal tax, be allowed as credits, in addition to the credits allowed to him under section 216, his proportionate share of such amounts specified in subdivisions (a) and (b) of section 216 as are received by the partnership.

      *      *      *      *      *      *      *

(d) The net income of the partnership shall be computed in the same manner and on the same basis as provided in section 212 except that the deduction provided in paragraph (11) of subdivision (a) of section 214 shall not be allowed.

The statute provides for the computation of the net income in accordance with the method of accounting regularly employed in keeping the books, upon condition, however, that the income be clearly reflected. Our problem in this proceeding is to determine the method of accounting regularly employed in keeping the books of the partnership and if the method so employed clearly reflects income.

It is not possible to adhere to absolutely definite rules in the case of all types of businesses and incomes and say that minor departure from either of the two most generally recognized and used methods of accounting may cause the scales to turn for or against the method insisted upon. A consideration of the question must not be characterized by a strict regard for insignificant errors or adherence to prescribed theories or methods, lest we lose sight of the controlling intendment of the statute that a method of accounting should be followed if it reflects true income.

The Rowe Drilling Co. conducted operations under contracts providing for payment upon completion of the drilling undertaken and subject to a possible total loss if the well failed of completion. There is little doubt of the financially hazardous nature of the operations due to the physical difficulties and uncertainties. The drilling of an oil well is ordinarily accomplished within a comparatively short time and the record presents no problem of accounting for long-term contracts. The business lends itself readily to a use of either the cash receipts and disbursements or an accrual method of keeping the books of account. If we find that the method of accounting regularly employed does, in fact, clearly reflect income, it is not only true that the petitioners are entitled to the use of the basis afforded by the books, but under section 212(b) of the Revenue Act of 1918, it is mandatory. Appeal of Owen-Ames-Kimball Co., 5 B. T. A. 921.

The influences so potent in leading the respondent to disregard the books and adopt an accrual basis, have little appeal to us. We are unable to hold that the deferment from one year when earned to another when paid, of an insignificant amount of income, or the determination that income was constructively received in the instance of overlapping partnership interests and ability of the debtor partnership to pay, should operate, in the absence of other considerations, as a bar to the use of a basis of cash receipts and disbursements, for such an opinion would result in the practical annulment of one of the statutory bases now allowed to the great majority of taxpayers and greater clarity or accuracy would not necessarily result. We find in the deferment until actually paid of an item of income in a previous year and, in another instance, an accrual under the doctrine of constructive receipt, actions which evidence very real efforts to adhere to a cash basis. The respondent attaches great weight to the presence on the books, of a few accounts, amounting in the aggregate to relatively minor totals, as of the end of each year, which are classified on the balance sheets as " accounts receivable " and relies upon the mere existence of these accounts to show that the method of accounting of the partnership, was on the accrual basis. He points out that these asset accounts were determinative of net

worth and apparently is thus influenced to believe that they entered through the door of income, and being unpaid, the income must have been an accrual. We think the fact has been overlooked that an account receivable may come into existence and be recorded on books of account, including those kept on a cash basis, without the slightest effect on income. The petitioners have endeavored to show the nature of every such account and have satisfied us that some of them covered transactions classifiable as loans or accommodation purchases chargeable at cost, and it is obvious that such are not indicative of an accrual of income. As to other accounts included in the classification, the evidence is not so clear as to enable a satisfactory determination of their relation to income. In the determination of so comprehensive a question as the method of accounting used, we are averse to drawing a presumption from the general nature of a very few accounts receivable, even where it is unfortunately true that we are left to conjecture how two debits described as "charges in error" and "disputed charges" were originally entered on the books. It is in evidence that the partnership never intentionally departed from a cash basis in determining its net income, and we conclude the record as a whole in this particular, supports the contention of the petitioners.

We do not include in the above discussion the account amounting to $12,366, which was voluntarily included in income for the year 1919, under the doctrine of constructive receipt, and which, therefore, is of no significance in a consideration of accounts alleged to be pure accruals. The respondent contends that the inclusion of this account in 1919, and the resulting exclusion from 1920, when paid, left the books in a status which determined income on a so-called "hybrid" basis. We are unable to agree with this, and are of opinion that the method of accounting for this item, adopted by the partnership, is in agreement with their claims to a cash basis.

Whether the bookkeeping in 1920, was good or was bad, when the Cline Oil Co. was charged for drilling and equipment in advance of payment, we are not concerned, for we are satisfied that the reversing entry, as a matter of fact, cleared away the entire unpaid balance of this account and reduced the books to a cash basis. Neither is it necessary to consider the accounting procedure adopted through a reentry of the balance in the year following, for it was subsequent to and had no effect on the computation of the preceding year's income on the cash basis, and at worst, is merely a question of bookkeeping procedure.

After a careful consideration of the record, we are of opinion that the partnership kept its books for 1920 on a cash basis, and that such basis, for the purpose of the income tax, clearly reflected its income.

It follows that the distributive shares of the four petitioners should be derived from the partnership income computed on the basis of cash receipts and disbursements.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, PHILLIPS, and VAN FOSSAN.