REYNOLDS CATTLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 68445, 71463. Promulgated September 27, 1934.

*B. B. Stone*, Esq., and *Y. D. Harrison, Jr.*, C.P.A., for the petitioner.

*Frank B. Schlosser*, Esq., and *R. B. Cannon*, Esq., for the respondent.

OPINION.

ADAMS: These two cases were consolidated and heard together. Docket No. 68445 involves a deficiency in income tax for 1929 of $6,664.91, and Docket No. 71463 involves a deficiency of $1,572.52 for 1930.

Practically all of the material facts were stipulated in writing, which we adopt by reference as part of our findings of fact. The same question is presented in each case, viz., whether the petitioner has the right to change from an inventory system of making its returns to a cash receipts and disbursements system without the formal permission of the Commissioner.

The petitioner is a Texas corporation, organized about 1884, and has its principal office in Fort Worth, Texas. It is engaged in the cattle ranch business and operates on a large scale, raising about 95 percent of its cattle and buying and feeding the other 5 percent. Early in its existence and many years before the inception of the present income tax laws the petitioner adopted for its own convenience and information an inventory system of accounting by which it divided its livestock into two classes, namely, " calves " and " other cattle." The inventory value placed upon the calves was $10 per head, and when the calf became a yearling the value was increased to $20 per head. While the arbitrary values thus placed on the inventory remained constant, the number of cattle varied greatly and frequently throughout the years, as did also the market value of cattle. Arbitrary values were also fixed for lambs and horses. This system was continued after the enactment of the income tax laws and was used by petitioner up to and including the year 1930, and petitioner made its income tax returns on that basis up to and including the year 1928. In 1929 field representatives of the Internal Revenue Bureau, after an examination of petitioner's returns and accounts for the years 1926, 1927, and 1928, objected to the use of the inventory by petitioner on the ground that it did not properly reflect petitioner's income and ordered returns made on the basis of cash receipts and disbursements.

Petitioner protested the proposed change to the revenue agent in charge at Dallas, Texas, who sustained the field examiner and ordered the cash basis used. Returns were thereupon prepared on the cash basis, and the respondent proposed a deficiency of $27,354.52 for the three years. Petitioner claimed that on the cash basis it was entitled to a refund of about the same amount. The matter was determined in Washington in June 1931 by the Commissioner making a refund to petitioner of approximately $5,000, using the inventory basis in closing the case.

While the controversy was pending in the Internal Revenue Bureau relative to the years 1926, 1927, and 1928, petitioner prepared

and filed its returns for 1929 and 1930 on the cash receipts and disbursements system in accordance with the instructions given it by the field examiner and the revenue agent in charge at Dallas, Texas. These returns were received and filed, but in determining the deficiencies in controversy the respondent held that the returns should have been made according to the inventory system formerly in use and not the cash system, because the respondent had not granted permission for the change. For the calendar year 1932 and subsequent years the respondent granted permission in writing to make the change.

According to the inventory method applied by the respondent there were included the following unsold animals at the prices indicated, which were fixed without any reference whatever to market prices, or classification as to condition, quality, or age, except into calves and other cattle:

*For the year 1929:*

| | |
|---|---:|
| 4,665 unsold calves grown in 1929, valued at $10 per head | $46, 650 |
| 2,834 unsold calves grown in 1928, increased in value by $10 per head to $20 per head | 28, 340 |
| 564 lambs grown in 1929, valued at $4 per head | 2, 256 |
| Total | 77, 246 |

*For the year 1930:*

| | |
|---|---:|
| 3,264 calves grown in 1930, valued at $10 per head | $32, 640 |
| 3.639 calves grown in 1929, increased in value by $10 per head to $20 per head | 36, 390 |
| 950 lambs grown in 1930, valued at $2.10 per head | 1, 995 |
| Total | 71, 025 |

It is the position of the petitioner that, although it did not have the formal permission of the Commissioner to change its basis of reporting income, the actions of the field examiner and revenue agent in charge are tantamount to a permission by the respondent to make the change, and that whether this be so or not the inventory system used by petitioner did not fairly reflect its income in that by its use there was included in income mere appreciation of value, or marking up on the books, which was in no sense income until there was a sale of such assets.

Section 41 of the Revenue Act of 1928 provides that " the net income shall be computed  *  *  *  in accordance with the method of accounting regularly employed in keeping the books of such taxpayer," but " if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

Both the statutes and the regulations recognize that the selection of the method of keeping his books is primarily for the taxpayer (see *Morris-Poston Coal Co.* v. *Commissioner*, 42 Fed. (2d) 620), but, while the taxpayer may adopt his own method of accounting, he must compute his net income in accordance with such method if it clearly reflects income, *Ribbon Cliff Fruit Co.*, 12 B.T.A. 13. If the taxpayer desires to change his method of computation he must, as a general rule, have the approval of the Commissioner. See Regulations 74, art. 322; *American Conservation Service Corp.*, 24 B.T.A. 183.

The primary purpose of the statute is to tax income and the computation must be made with this purpose in view. To this end the Commissioner is authorized to approve any change in the method of computation, but his authority does not extend to the use of any method that does not clearly reflect income and he may not arbitrarily require the use of such method.

In *Daily Record Co.*, 13 B.T.A. 458, we said: "It is well settled that the income of the petitioner is to be determined by *actual facts* as to which the books of account are only evidential. *Doyle* v. *Mitchell Bros.*, 235 Fed. 686; *Southern Pacific Co.* v. *Menter*, 260 Fed. 837. The gist of these decisions is that in order to be income amounts must have been received or accrued and that this is a question of fact not to be determined by any error in bookkeeping made either during the taxable year or in prior years."

In *Theodore H. Beckman*, 8 B.T.A. 830, the petitioner was a farmer engaged in raising grapes, horses, cattle, and hogs. He took inventory of all his stock at the beginning and the close of the year. The Commissioner determined his tax liability upon the basis of cash receipts and disbursements. In affirming the Commissioner's determination we said: "The fact that inventories were taken at the beginning and close of each year is not sufficient in itself to show that the cash receipts and disbursements method did not clearly reflect income."

In *D. B. Dearborn, Jr.*, 2 B.T.A. 59, the petitioner contended that his net income was properly reflected upon an accrual basis because that was the method of accounting regularly employed in keeping his books. The Commissioner contended that the method of accounting employed did not clearly reflect income and the cash basis should be used. There was no well established method of accounting. The petitioner's books showed the estimated earnings. In affirming the Commissioner, we said:

This is not a situation where the estimates are merely exceptional or incidental items in a larger consistent system of accounts. The entire earnings of the business are here involved and the alleged accrual basis is sought to be

evolved from this crude practice of tentative estimates. If for any reason the estimates should prove to be excessive they would not measure the taxpayer's tax liability. Conversely, he should not be permitted to substitute his own estimates for the income which he actually receives.

The inventories of petitioner were not even estimates of the value of its stock. They were merely a constant price or nominal value assigned to certain classes of stock.

Article 106 (a), (b) of Regulations 74 provides in part as follows:

Because of the difficulty of ascertaining actual cost of livestock and other farm products, farmers who render their returns upon an inventory basis may, at their option, value their inventories for the current taxable year according to the " farm price method ", which provides for the valuation of inventories at market price less cost of marketing.

It is further provided in Regulations 74, article 102:

The following methods, among others, are sometimes used in taking or valuing inventories, but are not in accord with these regulations, viz:

\*       \*       \*       \*       \*       \*       \*

(4) Using a constant price or nominal value for so-called normal quantity of materials or goods in stock.

The Commissioner admits that the petitioner did not use the farm price method of accounting, and that its whole system of accounting is a hybrid system. Clearly, the method employed was not in accordance with the regulations.

In *Lucas* v. *Kansas City Structural Steel Co.*, 281 U.S. 264, the company had valued its base stock or normal stock at a constant price, regardless of the actual cost or the market. In disapproving this method the Supreme Court said:

It is not contested that, if inventories are necessary in order to determine the company's income, the " base stock " method does not fulfill the desiderata. The federal income tax system is based upon an annual accounting period. This requires that gains or losses be accounted for in the year in which they are realized. The purpose of the inventories is to assign to each period its profits and losses. In years of rising prices, the " base stock " method causes an understatement of income; for it disregards the gains actually realized through liquidation of low price stock on a high price market. In times of falling prices, it causes an overstatement of income; for it ignores the losses which result from the consumption of high price stock. This method may, like many reserves which business men set up on their books for their own purposes, serve to equalize the results of operations during a series of years. But it is inconsistent with the annual accounting required by Congress for income tax purposes. It results in offsetting an inventory gain of one year against an inventory loss of another, obscures the true gain or loss of the tax year, and thus misrepresents the facts. It does not conform with the general or best accounting methods and is apparently obsolete. The company disclaims any defense of the base stock method; and the lower court disapproved it.

In *Chatham & Phenix National Bank*, 1 B.T.A. 460, the Board held that, notwithstanding the objection of the Commissioner, the taxpayer had the right to change from a system of accounting which

included in income something that was not income to a system which would clearly reflect its income. We there said:

> The statute contemplates an accounting method which will correctly reflect income, and we do not doubt the reasonableness of the above regulation when the change is from a method of accounting which reflects the income to another approved method, and the Commissioner may be justified in refusing to permit a change without adjustment of prior returns. Here we have a change from a method of accounting which includes items not properly income and we do not think a change to a method which will clearly reflect income can be prevented, and the taxpayer compelled to report amounts not properly taxable as income. * * *

No argument is made and we think none can be made that the computation of petitioner's income according to the method used in its inventories clearly reflects its income. This was the decision reached by the field agent after an examination of petitioner's books and by the agent in charge at Dallas, Texas, upon a review of the field agent's action, and, while not controlling, we think the action of these duly authorized representatives of the Commissioner in the course of their regular duties is evidential of that fact. Moreover, as indicated above, the use of a constant price method in valuing inventories is condemned by the Commissioner in his regulations and by the courts.

It is nowhere contended that the cash method of reporting income does not reflect the true income of the petitioner in the taxable years, and in 1932 the Commissioner approved it and consented to its use.

The making of an audit and the approval of a method for the computation of income are administrative acts and the regulation requiring the Commissioner's consent to any change is purely administrative in character. Cf. *Burnet* v. *Chicago Ry. Equipment Co.*, 282 U.S. 295. The Commissioner may in the first instance direct that a change be made, and in that event, it could hardly be argued that the taxpayer must secure formal permission to change in order to comply with the regulations. This would be requiring the doing of a vain thing, which the law does not require.

We think the method urged by the respondent does not clearly reflect petitioner's income. It appears that the cash receipts and disbursements method as used by petitioner does correctly reflect its income. Therefore, in view of all the circumstances, we hold that the Commissioner's refusal to approve the cash method is an unreasonable and arbitrary exercise of his power not contemplated by the statute.

Under the facts and conditions of this case we hold petitioner properly reported its income for the taxable years 1929 and 1930 on the cash basis.

Reviewed by the Board.

*Decision will be entered under Rule 50.*