ROSS B. HAMMOND, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83688. Promulgated August 31, 1937.

*Robert T. Jacob, Esq.*, for the petitioner.
*F. R. Shearer, Esq., C. C. Holmes, Esq.*, and *E. M. Woolf, Esq.*, for the respondent.

OPINION.

DISNEY: The determination of the issue in the instant case requires the consideration, interpretation, and application of sections 41 and 42 of the Revenue Act of 1932 and articles 322 and 334 of Regulations 74 and 77, made pursuant thereto.

The sections of the act referred to are as follows:

### SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. (For use of inventories, see section 22 (c).)

### SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted' under section 41, any such amounts are to be properly accounted for as of a different period.

## Article 322, Regulations 77 reads in part as follows:

*Bases of computation.*—Approved standard methods of accounting will ordinarily be regarded as clearly reflecting income. A method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with reasonable consistency. * * *

The true income, computed under the Revenue Act of 1932 and, where the taxpayer keeps books of account, in accordance with the method of accounting regularly employed in keeping such books (provided the method so used is properly applicable in determining the net income of the taxpayer for purposes of taxation), shall in all cases be entered in the return. If for any reason the basis of reporting income subject to tax is changed, the taxpayer shall attach to his return a separate statement setting forth for the taxable year and for the preceding year the classes of items differently treated under the two systems, specifying in particular all amounts duplicated or entirely omitted as the result of such change.

A taxpayer who changes the method of accounting employed in keeping his books for the taxable year 1932 or thereafter shall before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. For the purposes of this article, a change in the method of accounting employed in keeping books means any change in the accounting treatment of items of income or deductions, such as a change from cash receipts and disbursements method, to the accrual method, or vice versa; a change involving the basis of valuation employed in the computation of inventories (see articles 101–108) ; a change from the cash or accrual method to the long-term contract method, or vice versa; a change in the long-term contract method from the percentage of completion basis to the completed contract basis, or vice versa (see article 334) ; and a change involving the adoption of, or a change in the use of, any other specialized basis of computing net income such as the crop basis (see articles 57 and 131). Application for permission to change the method of accounting employed and the basis upon which the return is made, shall be filed within 90 days after the beginning of the taxable year to be covered by the return, except that as to the taxable year 1932 such application may be filed not later than 30 days prior to the close of the taxable year. The application shall be accompanied by a statement specifying the classes of items differently treated under the two methods and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change. Permission to change the method of accounting will not be granted unless and until the taxpayer and the Commissioner agree to the terms and conditions under which the change will be effected.

## Article 334 reads as follows:

*Long-term contracts.*—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used herein the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year. Persons whose income is derived in whole or in part from such contracts may, as to such income prepare their returns upon the following bases:

(a) Gross income derived from such contracts may be reported upon the basis of percentage of completion. In such case there should accompany the return certificates of architects or engineers showing the percentage of completion during the taxable year of the entire work to be performed under the

contract. There should be deducted from such gross income all expenditures made during the taxable year on account of the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable period for use in connection with the work under the contract but not yet so applied. If, upon completion of a contract, it is found that the taxable net income arising thereunder has not been clearly reflected for any year or years, the Commissioner may permit or require an amended return.

(b) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.

A taxpayer may change his method of accounting to accord with paragraphs (a) and (b) of this article, only after permission is secured from the Commissioner as provided in article 322.

Counsel for the petitioner in his reply brief states: "The crux of the entire case is whether the respondent gave the petitioner, impliedly or expressly, consent to file its return for 1932 on the basis of percentage of completion of long-term contracts." He insists that such consent was given and contends that respondent's consent is to be found in the letter of December 15, 1933, written by the internal revenue agent in charge at Seattle, Washington. The entire body of that letter is set out in our findings of fact. Do its contents justify the contention made by petitioner's counsel? That letter merely informed the petitioner that its income tax return for 1932 had been recommended for acceptance as correct, and advised it that such was subject to approval in Washington and "that should subsequent information be received which would materially change the amount reported, the Bureau is obliged under existing laws to redetermine your tax liability." The letter shows the internal revenue agent in charge made only a recommendation relative to petitioner's 1932 return. The agent in charge was not authorized and did not attempt to do more than recommend.

There is no evidence in the record that petitioner made any inquiry of the agent in charge or of the respondent as to how the recommendation was considered and acted upon by the respondent.

For the calendar year 1931 and for taxable years prior thereto, the petitioner reported upon its Federal income tax returns income upon construction contracts upon the basis of the net result of the completion of each individual contract. In the income tax return for the taxable year 1932 petitioner reported profit of $7,925.51 from job No. 175, which was begun in 1931 and completed in 1932.

Petitioner, contrary to its previous practice in reporting income from construction projects, included in its return for 1932 an estimated profit of $17,000 as of December 31, 1932, which profit accrued

on job No. 179, begun in 1932 and completed in 1933. The record shows that in 1932 there was no taxable income of petitioner whether or not the $17,000 accrued profit from job No. 179 was included in its return for that year.

Upon completion of job No. 179 in 1933, a total net profit of $22,145.92 had been realized, but only the difference between that amount and the $17,000 accrued profit in 1932 from job No. 179, to wit, $5,145.92, was reported as taxable income in petitioner's 1933 return.

The record indicates the petitioner's accounting system and manner of making its income tax returns in 1931 and in prior years met with the acceptance and the approval of the respondent and there is no controversy on this point. There is no evidence that petitioner ever made any request of, or application to, respondent (Commissioner) that it be allowed to change in any respect its manner of accounting and reporting its income as it had been doing in 1931 and prior years.

The Revenue Act of 1932 was approved June 6 of that year and was effective, as to "Title I—Income Tax", on January 1, 1932. The fact that the regulations made pursuant to the provisions of that act and set forth in our findings of fact were not approved and promulgated until February 10, 1933, did not, in our opinion and we so hold, relieve the petitioner from the necessity, which already existed, of securing the consent of the Commissioner before changing in its 1932 return, filed in 1933, the method of accounting theretofore regularly employed by it in 1931 and prior years.

Assuming that petitioner was not affected by Regulations 77, articles 322 and 334, as to his return for 1932, Regulations 74, articles 322 and 334, respectively, must be held to be effective. As contended by the petitioner, Regulations 74, article 334, did not contain a requirement that permission be secured from the Commissioner, until modified by Regulations 77, article 334. However, article 322 of Regulations 74 provides in general, under the caption "Bases of computation", that:

A taxpayer who changes the method of accounting employed in keeping his books for the taxable year 1928 or thereafter should, before computing his income upon such new basis for purposes of taxation, secure the consent of the Commissioner. Application for permission to change the basis of the return shall be made at least 30 days before the close of the period to be covered by the return and shall be accompanied by a statement specifying the classes of items differently treated under the two systems and specifying all amounts which would be duplicated or entirely omitted as a result of the proposed change.

Although the word "should" is first used as to the securing of consent of the Commissioner, it is immediately followed by a requirement that "Application for permission to change the basis of the

return *shall* be made at least 30 days before the close of the period to be covered by the return." (Emphasis ours.) Under such language, we regard and hold article 322 as requiring the Commissioner's permission before a change of basis, even prior to the regulations promulgated February 10, 1933.

Moreover, we conclude that the petitioner did not by his return for 1932 comply with the then regulations requisite to report profit from a long term contract prior to the year of final completion. Article 334 of Regulations 74 provides that the income from long term contracts is in general taxable for the period for which the income is determined, and further provides that gross income derived from such contracts may be reported either (a) upon the basis of percentage of completion, or (b) may be reported in the taxable year in which the contract is finally completed. The statute, section 42 in the Acts of both 1928 and 1932, specifies in general that income is to be reported for the taxable year "in which received by the taxpayer." It is not disputed that the contract herein involved was not finally completed until 1933. Of the income therefrom, $17,000, as above seen, which was in general under Regulations 74, article 334, to be reported "for the period in which the income is determined", was reported in 1932. The year of determination is plainly, we think, the year when the final result as to income from the contract is ascertained, and not a year when a mere estimate is made, as here. The very fact that an estimate was made in 1932 shows that the total profit or income was not settled, determined, until closing of contract in 1933. Moreover, was the return made for 1932 "upon the basis of percentage of completion?" No percentage was specified in the return. In fact, the return nowhere uses the figures $17,000, and the same is nowhere identifiable, apparently being simply a portion of the gross receipts of $388,674.84 which were reported. Yet, article 334 of Regulations 74 provides that:

\* \* \* In such case there should accompany the return certificates of architects or engineers showing the percentage of completion during the taxable year of the entire work to be performed under the contract. There should be deducted from such gross income all expenditures made during the taxable year on account of the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable period for use in connection with the work under the contract but not yet so applied. \* \* \*

The return for 1932 furnishes none of the above mentioned information and it is obvious that the petitioner complied neither with the letter nor the object of the above article of the regulations. As above pointed out, petitioner's counsel in his reply brief states that the crux of the case was whether petitioner was by the respondent given implied or express consent to file its return for 1932 on the basis of percentage of completion of a long term contract. We fail

to see where the petitioner filed such a return on such a basis—assuming that it had such consent. What it filed failed to comply with regulations then in effect. We conclude that permission of the Commissioner was necessary for a change of basis in 1932, prior to Regulations 77, and that the return filed did not comply with the then regulations as to material and essential content of return. This leaves for consideration the question as to whether there was a waiver by the Commissioner of the regulations.

The letter of December 15, 1933, relied on by petitioner to establish the Commissioner's consent to the change desired in reporting its income, is ineffective not only for reasons heretofore stated, but for lack of authority in the agent in charge to give consent to the change sought. *Darling* v. *Commissioner*, 49 Fed. (2d) 111; certiorari denied, 283 U. S. 866. Such power was not within the scope of his authority. Furthermore, there is no evidence that he even attempted to exercise such power or authority.

The record shows that the revenue agent, upon examination of the books and records of the petitioner in November 1933, discovered that petitioner had in its 1932 return changed in one particular, pointed out in our findings of fact, its method of reporting its income. As a result of the revenue agent's investigation and the discovery of the change made by petitioner in reporting income from construction contracts, there was eliminated from petitioner's 1932 income tax return the accrued income of $17,000 on job No. 179. The petitioner, however, was not informed that such action had been taken. On the assumption that the 1932 return as filed had been accepted—no tax being demanded of petitioner under its 1932 return—the petitioner continued to keep its books of account and to report its earnings and expense upon the basis of determining the percentage of income and expense attributable to each uncompleted job during each calendar year.

In the early case of *Clendening Co.*, 1 B. T. A. 622, we held as a general rule or principle that a taxpayer may not change the basis of reporting income without complying with the regulations prescribed by the Commissioner pursuant to statutory authority. See also *American Conservation Service Corporation*, 24 B. T. A. 183, 185; *Jerome R. George*, 27 B. T. A. 765, 770; *East Coast Motors, Inc.*, 35 B. T. A. 212, 217. That general principle has been adhered to in all our revenue statutes and regulations made pursuant thereto and in the decisions of the Federal courts and of this Board. Where there have been qualifications or modifications of the principle, it has been, in our opinion, under circumstances substantially different from those in the instant case. As the return shows, the petitioner had no income tax to pay in 1932, regardless of whether it had reported as it did prior to 1932, or made the change in 1932 as it did.

The filing and closing of its 1932 return, not shown to be communicated to petitioner, therefore, did not imply that the Commissioner gave his consent to the changing of petitioner's "method of accounting regularly employed" by it in 1931 and prior years, nor give petitioner any equitable grounds of complaint based on limitation statutes or as to waiver.

There was in the treatment of this matter by the Commissioner no "trap for the unwary", for petitioner has not been injured, having on either theory for basis of return a loss for 1932; it is simply prevented from using a change of basis as a means of deducting $17,000 in 1932, when it had a loss to offset it, instead of 1933 when the income was actually received.

We are unable to see, in the circumstances in this case, that mere inaction by the Commissioner is evidence of the voluntary relinquishment of right which is essential to waiver, and plainly estoppel does not lie, there being no showing of detriment to petitioner.

To permit the petitioner to change its method of reporting income, as it contends, would be to allow it to evade paying income tax on the accrued income of $17,000 on job No. 179, by including the $17,000 in income in a year, 1932, when its losses were such that it would have no taxable income on which to pay and would result in including in its taxable income for 1933, the year in issue, only $5,145.92 of the $22,145.92 profit actually realized upon the completion of job No. 179. This would not be clear reflection of income.

Such distortion of income as would result, if petitioner were permitted to change its method of reporting as attempted by it, under circumstances disclosed by the record in the instant case, is not, in our opinion, authorized by the statute nor warranted by the regulations made pursuant thereto.

We are of the opinion and hold that the respondent did not err in refusing to permit the petitioner, under the circumstances shown by the record, to change its method of reporting income from the completed contract basis, consistently followed by it prior to 1932, to the percentage of completion basis, which it sought to adopt in 1932 and 1933, attempting to do so without securing the necessary consent of the Commissioner thereto.

We, therefore, are of the opinion and hold that in the determination of the petitioner's tax liability for the year 1933 the respondent did not err in including in income of petitioner the sum of $17,000—assigned by petitioner as error—and the respondent's determination with respect thereto is accordingly approved.

The record shows that the respondent concedes he should have allowed petitioner as ordinary and necessary entertainment expenses the sum of $450, and no more is insisted upon.

*Decision will be entered under Rule 50.*