Bellevue Manufacturing Co. v. Commissioner.
Bellevue Mfg. Co. v. Commissioner
Docket No. 39437.
United States Tax Court
T.C. Memo 1957-94; 1957 Tax Ct. Memo LEXIS 156; 16 T.C.M. (CCH) 390; T.C.M. (RIA) 57094; June 10, 1957
*156 Held, in the absence of any books and records by the petitioner, the respondent was correct in determining petitioner's income on the cash receipts and disbursements method; held, further, the petitioner did not show reasonable cause for failure to file proper corporate income tax returns for the years here involved and consequently is liable for additions to tax under section 291(a); held, further, the statute of limitations is inapplicable to any of the taxable years involved. Martin M. Lore, Esq., 107 William Street, New York, N. Y., for the petitioner. Scott A. Dahlquist, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in income tax and additions to tax as follows: Additions to
Tax Under
Year
Income Tax
Section 291(a)
1946
$584.85
$146.21
1947
160.98
40.25
1948
270.47
67.62
1949
190.71
The issues presented are (1) whether the respondent was correct in computing the petitioner's taxable income for years involved on the cash receipts and disbursements method; (2) whether the petitioner is liable for additions to tax under section 291(a) of the 1939 Internal Revenue Code[1] for the years 1946, 1947, and 1948; and (3) *157 whether the years 1946 and 1947 are barred by the statute of limitations. Findings of Fact Petitioner is a corporation organized under the laws of the State of New Jersey, with its principal office in Elizabeth, New Jersey. During the years here involved, the petitioner was engaged in the real estate business, owning and operating a single property. Rent from this property was petitioner's only income. In the years 1946, 1947, and 1948 petitioner filed a purported corporation income tax return with the then collector of internal revenue for the fifth district of New Jersey. These purported returns were signed only by Mario G. Mirabelli, designating himself as president in 1947 and 1948, but with no designation of any corporate title in 1946. Petitioner's 1949 corporate return, also filed with the then collector of internal revenue for the fifth district of New Jersey, was signed by Mario G. Mirabelli and Katherine Mirabelli, with the parties designating themselves as president and treasurer, respectively. During the years 1946 through 1949, inclusive, Mario G. Mirabelli was the president *158 of the petitioner, and Katherine Mirabelli was treasurer. Albert J. Ruocco was the secretary of the petitioner in 1946. Mario is the sole stockholder of petitioner at the present time. He paid $400 for his stock at the time petitioner was organized. No indication was made by the petitioner on the purported return filed for 1946 as to whether the return was made on the basis of the cash receipts and disbursements method or some other method. On the purported returns filed for the years 1947 and 1948, and the return for 1949, the word "accrual" appeared in the space provided on the form for that purpose. No inventories were kept by the petitioner. Petitioner purchased the rental property in 1946 for approximately $86,000, and gave a mortgage for $62,000 on a loan from the Elizabethport Banking Company. At the time of the purchase, Mario G. Mirabelli made a loan of $5,000 to the petitioner, and at approximately the same period Katherine Mirabelli made a loan to the petitioner of $21,000. The balance remaining unpaid on the mortgage on November 7, 1956, was $46,264.91. Petitioner was unable to produce or turn over any books or records for the years here involved to the revenue agent who *159 was making an examination of petitioner's returns for those years. There were no minute books or transfer books, no general ledgers, no cash receipts or disbursements books, nor were there any other records of any formal nature. It was therefore necessary for the agent to compute the petitioner's income for those years on a cash basis, using as a basis of such computation the petitioner's canceled checks and bank statements which were made available. In making this computation, the agent disallowed certain items on the returns which apparently represented accruals. It is this computation by the revenue agent of petitioner's income for the years 1946 through 1949 that gives rise to the deficiencies determined by the respondent. Opinion We have examined the entire record carefully and conclude that the respondent was correct in making the computation of the petitioner's income for the years 1946 through 1949 on the cash basis. Section 41.[2] It should be made clear at the outset that this is not a case where the respondent has changed a taxpayer's long established and consistently used method of accounting on the ground that it does not clearly reflect income or on any other ground. Instead, *160 it is a matter of deciding which method of accounting the taxpayer is on - cash or accrual - and then computing the taxpayer's income in a manner consistent with such method. See Harry Hartley, 23 T.C. 353; Elsie SoRelle, 22 T.C. 459. Here, no books or other records, however fragmentary, were introduced in evidence, and we conclude that none were kept during the years here involved. Where books and records are not in existence, and absent any other satisfactory evidence as to a method of accounting, this Court has approved the determination of the respondent that the cash receipts and disbursements method should be used. Federico Stallforth, 6 T.C. 140; Mansuss Realty Co., 1 T.C. 932, affd. 143 Fed. (2d) 286; Sam Greengard, 8 B.T.A. 734, affd. 29 Fed. (2d) 502. We have examined the returns filed by petitioner for the years involved, and we have studied the nature of its operations and are convinced that the petitioner's method of accounting for its income, rudimentary as it was, more closely resembled the cash receipts and disbursements method than the accrual method. Its income was entirely from rentals, and we have been given no indication that any of the rentals reported *161 as income represent accruals. No inventories were kept or needed. We are shown no accruals of salaries or other compensation for services. There are no books which would make the accrual method at all meaningful, and, as we pointed out in Paul Irvin Redcay, 12 T.C. 806, "'an accrual method without accounting records is an anomaly.'" Nor is the label which the petitioner attaches to its income tax returns determinative of the question before us. Aluminum Castings Co. v. Routzahn, 282 U.S. 92. It is true that the petitioner introduced as evidence at the trial certain balance sheets, one for each of the years involved. We have examined these and do not see how they can establish that the petitioner was on the accrual basis during those years. There appears on these statements an item, on the liability side, designated as an accrual of interest, which appears to be a cumulative figure from year to year. However, even as to this figure, there is no correlation between it and the amounts deducted as interest on the returns filed by petitioner. Consequently, the mere presence of such items on these financial statements standing alone, is of no help to this Court in deciding whether or *162 not petitioner was on the accrual basis. Certainly such items do not by themselves establish that the petitioner was on an accrual basis, for it is clear that minor deviations from the cash basis are not sufficient to sustain a holding that the accrual basis was used. Estate of L. W. Mallory, 44 B.T.A. 249; cf. M. D. Rowe, 7 B.T.A. 903. Respondent has determined additions to petitioner's tax for the years 1946, 1947, and 1948 under *163 section 291(a) [3] *165 for failure to make and file the required corporate returns for those years. Petitioner's returns for those years were signed only Mario G. Mirabelli as president. However, we have found as a fact that during these same years petitioner's treasurer was Katherine Mirabelli, and without her signature as well as that of Mario it cannot be said that the returns filed by petitioner for the years 1946, 1947, and 1948 were proper returns within the meaning of section 52(a).[4] *166 Section 52(a) specifies that a "return shall be sworn to by the president, vice president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer." These requirements are mandatory. Fourth & Railroad Realty Co., 25 T.C. 458; Burford Oil Co., 4 T.C. 613, affd. 153 Fed. (2d) 745. We do not believe that Mario was, in effect, both president and treasurer, and therefore cases like Lucas v. Pilloid Lumber Co., 281 U.S. 245, and Consolidated Apparel Co., 17 T.C. 1570, reversed in part on other issues, 207 Fed. (2d) 580, are not applicable. During the year 1946, Albert J. Ruocco was secretary of the petitioner, and his name appears on the return for that year *164 as a notary, but not as a corporate officer. We do not see how this meets the requirements of section 52(a). The purpose of the signature on a corporate return by the corporate officers is to fix responsibility, and we do not believe that a signature as a notary meets this need. Petitioner has not shown reasonable cause for its failure to file proper corporate returns for the years 1946, 1947, and 1948. We conclude that petitioner did not file a corporation income tax return as required by section 52(a) and that, absent a showing of reasonable cause, the addition to tax under section 291 is applicable. Petitioner argues that the years 1946 and 1947 are barred by the statute of limitations. We cannot agree. Section 276(a) provides that in the case "of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." We have held that the returns filed by the petitioner in 1946 and 1947 were not proper returns within the meaning of section 52(a), and we conclude that this holding is also determinative of the statute of limitations issue. We hold that petitioner failed to file a return for the years 1946 and 1947 and that consequently, under section 276(a), the deficiencies for those years are properly before this Court. Decision will be entered for the respondent. Footnotes
1. All references to section numbers will refer to the 1939 Internal Revenue Code↩ unless otherwise noted.
2. SEC. 41. GENERAL RULE. The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.↩
3. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1). 4. SEC. 52. CORPORATION RETURNS. (a) Requirement. - Every corporation subject to taxation under this chapter shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this chapter and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner with the approval of the Secretary may by regulations prescribe. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer, assistant treasurer, or chief accounting officer. In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business or corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control.