MICHAEL AND HELEN S. DRAZEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

YALE AND SYLVIA DRAZEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72584, 72585.    Filed September 22, 1960.

*Robert H. Batts, Esq.,* for the petitioners.
*William H. Welch, Esq.,* for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The sole issue is whether respondent erred in denying petitioners and the partnership permission to report income for 1953 on an accrual basis of accounting.

Respondent made certain minor adjustments to petitioners' income as reported on the cash basis, thus giving rise to the deficiencies for 1953. Petitioners did not place these adjustments in issue and conceded their correctness at the hearing. The concessions will be given effect in the recomputation under Rule 50.

Section 41 of the Internal Revenue Code of 1939 requires (1) the income to be computed "upon the basis of the taxpayer's annual accounting period," and (2) "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer." It also provides (3) that if the method employed does not clearly reflect income, "the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

Petitioners take the position that only an accrual method of accounting clearly reflects income in this case. This method is necessary, they say, because it is desirable to relate the expenses of each period to the income arising in that period, i.e., the costs and expenses must be deducted from the income earned through incurring such expenses. Such, petitioners maintain, is the learning derived from the writers in the field of accounting, the language of the cases, and the inferences present in the Internal Revenue Code itself.

Furthermore, petitioners contend that their books contained "accrual" information and hence the books were ipso facto on an accrual basis, or at least cannot be taken as lacking in the necessary information. Finally, petitioners view the film process as "production" or "manufacture" which, under section 39.22(c)–1 of Regulations 118,[1] requires the use of inventories. Section 39.41–2(a) of

---

[1] Sec. 39.22(c)–1. *Need of inventories.* In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale, in which class fall containers, such as kegs, bottles, and cases, whether returnable or not, if title thereto will pass to the purchaser of the product to be sold therein. Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold (including containers), title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected. * * *

Regulations 118 states that "in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method." See *Iverson's Estate* v. *Commissioner*, 255 F. 2d 1 (C.A. 8), affirming 27 T.C. 786.

Section 39.41–2 of Regulations 118 states that the taxpayer who changes the method of accounting from that regularly employed in keeping his books shall, before computing his income upon such new method, secure the consent of the Commissioner.

Petitioners argue that however much this regulation may apply to taxpayers who use a method of accounting which reflects income and seek to change to a different method equally reflecting income, it does not apply to the situation at hand. Section 41 of the 1939 Code, they contend, places an equal burden on *both* the taxpayer and the respondent to choose and utilize a method which reflects income. According to petitioners, if cash receipts and disbursements distort income, they must change, as a matter of law, to an accrual method, and respondent lacks authority to force taxpayers to use an illegal method of reporting income.

Respondent, however, rejected the amended returns which sought to report income on an accrual basis and accepted the original returns on the cash basis. Thus, respondent's determination requires that petitioners continue to use the accounting method consistently employed in prior years, viz, the cash method. This method, according to respondent, clearly and accurately reflects income for the year in question.

Respondent also relies upon his regulations which forbid a change in the accounting method in use without his prior consent. Sec. 39.41–2(c), Regs. 118; Rev. Rul. 59–285, 1959–2 C.B. 458. Admittedly, petitioners did not secure prior consent but instead denied the need for such consent, although they did an "about face" and requested permission for a change in 1955.

It should be made clear at the outset that this is not a case wherein respondent has accepted the change and now seeks to enforce adjustments in the computation of taxable income.

The basic issue, as we view the case, is not whether the taxes might be computed differently under an accrual method, but whether, so computed, it would more clearly and accurately reflect petitioners' income. Hence, petitioners have the burden of showing not only that a different tax would result from the change in method, but that an accrual method would more "clearly reflect the income."

While it may be argued that the language used in a few previously reported cases indicates that the taxpayer must also choose a method which properly reports his income, in the final analysis

section 41 leaves the question to be determined "in the opinion of the Commissioner."

The respondent is vested with a broad administrative discretion in determining the question, and it is beyond the authority of this Court to overturn his determination unless the evidence clearly shows that he has abused his discretion. *Schram* v. *United States*, 118 F. 2d 541 (C.A. 6). Respondent in his discretion has determined that the cash method is adequate for the year 1953.

To recast the proposition in the context of petitioners' arguments, even if we were to accept their thesis that when a taxpayer's method of accounting does not clearly and accurately reflect income he is entitled to change to a method which does correctly reflect income without permission of respondent,[2] the burden would still rest upon petitioners to show that the cash method already in use distorts income.

Evidence of minor deviations or slight variations or a desire to lessen or shift the burden of taxation will not suffice. If taxpayers were permitted to change their method of accounting whenever so inclined, confusion would result and respondent would be placed under an almost impossible administrative burden. Our system of taxation contemplates that the taxpayer shall fairly and honestly keep his books under an accepted method and report his income for taxation as shown on those books. To permit changes such as here proposed would destroy the balancing effect of "consistency" which results over a period of time in justice to both sides. The courts have, therefore, uniformly approved respondent's refusal to permit a change in method without prior consent. See the following cases, among many reported: *The Clendening Co.*, 1 B.T.A. 622; *American Conservation Service Corporation*, 24 B.T.A. 183; *Jerome R. George*, 27 B.T.A. 765; *East Coast Motors, Inc.*, 35 B.T.A. 212; *Ross B. Hammond, Inc.*, 36 B.T.A. 497, affd. 97 F. 2d 545 (C.A. 9); *Estate of L. W. Mallory*, 44 B.T.A. 249; *Claude Patterson Noble*, 7 T.C. 960; *Elmwood Corporation* v. *United States*, 107 F. 2d 111 (C.A. 5); *United States Industrial Alcohol Co.* v. *Helvering*, 137 F. 2d 511 (C.A. 2); *Shoong Inv. Co.* v. *Anglim*, 45 F. Supp. 711 (N.D. Calif.); and *Advertisers Exchange, Inc.*, 25 T.C. 1086, affd. 240 F. 2d 958 (C.A. 2). See, also, sec. 481 I.R.C. 1954; secs. 1.481–1, 1.481–1(c) (5), 1.481–2, 1.481–3, Income Tax Regs.; S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 307; H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), p. A164; Summary of the New Provisions of the In-

---

[2] *Chatham & Phenix National Bank*, 1 B.T.A. 460; *Reynolds Cattle Co.*, 31 B.T.A. 206; Special Ruling (I.R.S.), Jan. 5, 1945. Cf. *Crosley Corporation* v. *United States*, 229 F. 2d 376 (C.A. 6); *Beacon Publishing Co.* v. *Commissioner*, 218 F. 2d 697 (C.A. 10).

ternal Revenue Code of 1954 (H.R. 8300), as agreed to by the conferees (Feb. 1955), at p. 69; 1958–3 C.B. 274, 965.

There is no question that the partnership kept its books and reported income on the cash basis. A memorandum of accounts receivable was kept and inventory value was taken from the spread sheets. These were subsidiary records kept to provide the partners and banks with "accrual" information. The notes payable account for 1953, for example, indicated the payments made on loans, but we find no evidence of an account reflecting accrued interest payable on these notes. We note also that the amended returns were identical with the original cash returns except for the use of inventories and inclusion of accounts receivable.

Petitioners argue that on the cash method their income for 1953 was $28,270.75, while on the accrual method their income would be $22,197.74, or a net overstatement on the cash method of $6,073.01. However, in 1952, a year not before us, income was $10,849.86 on the cash basis, while an accrual method indicates an income of $18,216.74, or a net understatement on the cash method of $7,366.88. This illustrates the effect and need of consistency, for the two incomes would thus even themselves out if the cash method were continuously followed. Furthermore, we do not view a difference of $6,073.01 between the two methods of accounting for the year 1953 as sufficient indication, in itself, that the cash method did not clearly reflect income.

Petitioners felt no need to change to the accrual method of reporting income until 1954. It was in June of that year that the partnership obtained the large Air Force contract. The partnership was informed in the latter part of 1954 of the change in specifications which would result in deferment of payment on the contract until a later year, perhaps as late as 1956. This fact alone motivated the change in reporting income. Until the end of 1954 petitioners considered the cash method as adequately reflecting their income. They resisted any change to the accrual method of keeping their books or reporting income, even though the accountant repeatedly suggested a change. Amended returns for 1952 and 1953 were filed in 1957 only because the revenue agent auditing their books so suggested. It does not appear that the partnership or petitioners were ordered to file amended returns reporting income on an accrual basis for those years. Clearly, the petitioners themselves considered the cash basis adequate in 1953.

While it is theoretically desirable to match expenses with income earned in incurring those expenses, it must be remembered that exact

and precise matching is seldom, if ever, achieved with either method of accounting. We pointed this out in *H. G. Irby, Jr.*, 30 T.C. 1166, modified 274 F. 2d 208 (C.A. 5), when we stated (at p. 1175):

Under either the cash or the accrual method, it is possible that expenses, paid or accruable, may be deductible in a year that is either prior or subsequent to the year in which the income related to such expenses is includible. See *Bressner Radio, Inc.*, 28 T.C. 378, on appeal (C.A. 2). This is simply the result of the facts, that taxable income must be computed on an annual basis, and that the computation of taxable income does not necessarily follow business accounting practices. *Guardian Investment Corporation* v. *Phinney*, (C.A. 5) 253 F. 2d 326. * * *

As we view the testimony, petitioners' concern arose from the fact that unless they could accrue income with expenses while performing the large Air Force contract entered into in 1954, the partnership would have sizable expense deductions, for example, in 1954 and 1955, with no income against which to offset them, while in 1956 the partnership, under the cash method, would have considerable income but no expenses to offset that income.

However this may be, petitioners have not shown any distortion of income in 1953 which might be caused by the failure to match income with expenses. For all that appears in the record, there was in fact no distortion on the cash basis in that year. The partnership's work at that time was rural electrification engineering and contracts for the production of films for map printing. As to the film process, this was the period of transition, acquisition of "know-how," and the training of employees. The earlier contracts were limited in scope and short in duration so as to enable the partnership to acquire experience to satisfy the requirements of the procurement laws.

No doubt there were variances but such are not sufficient to overturn respondent's determination that the cash method clearly reflected income. *H. G. Irby, Jr., supra; Glenn* v. *Kentucky Color & Chemical Co.*, 186 F. 2d 975 (C.A. 6).

Petitioners are also of the view that the partnership was required to maintain inventory of "work-in-progress" since it manufactured master films used in the printing of maps. Petitioners, however, have failed to demonstrate that inventories were necessary in 1953. It appears instead that the partnership was engaged partially in rural electrification work and partially in the performance of the limited contracts for film, both of which would require little, if any, work to be carried over from one taxable year to the next. In the testimony, the emphasis was again placed on the large Air Force contract which apparently would take up to 3 years to complete and would obviously entail carrying partially completed work from year to year.

Petitioners did commence manufacturing films, but whether and when this portion of its business became substantial enough to require the use of inventories and a change to an accrual method of keeping books and reporting income was a matter which we think would permit some reasonable latitude. It is possible, as we stated above, in the first years of conversion from rural electrification work to film processing, that either the cash method or an accrual method would reasonably reflect its income. *Stanford R. Brookshire*, 31 T.C. 1157, affd. 273 F. 2d 638 (C.A. 4), certiorari denied 363 U.S. 827.

Petitioners did not see fit to change until 1954, and did not file the amended returns until 1957. Such indicates that the cash method was deemed adequate in 1953. Petitioners are here arguing that they had inventories in 1953, but such were not used in computing income either on the partnership books or for reporting income on the original returns. In fact, it does not appear that "inventory" was used for any purpose other than supplying information to the partnership creditors. Certainly the partnership felt no pressing need to know the state of its inventory since it was computed only at the end of the year and does not appear on any of the monthly statements or yearend statements for 1953.

Furthermore, the mere presence of inventory does not necessarily mean that the cash method did not correctly reflect income. *Theodore H. Beckman*, 8 B.T.A. 830; *Glenn v. Kentucky Color & Chemical Co., supra; Stanford R. Brookshire, supra*. The largest item of any inventory that the partnership had was labor costs and only a minor part of its value was actually cost of the materials used. The partnership had no inventory of raw materials or finished work. The presence of inventory in 1953 did not effect any substantial distortion of income.

Minor deviations and errors in the treatment of certain items which do not play a large role in the computation of taxable income are not sufficient to refute the Commissioner's determination that the cash method does clearly reflect income. *Schram v. United States, supra; M. D. Rowe et al.*, 7 B.T.A. 903. Consistency is the key and is required, regardless of the method or system of accounting used or thought by the parties to be more helpful taxwise. *Advertisers Exchange, Inc., supra; Schram v. United States, supra; Stanford R. Brookshire, supra; National Builders, Inc.*, 12 T.C. 852.

Petitioners have failed to establish that the cash method actually employed in 1953 did not clearly reflect income in that year, nor have they established other error in respondent's determination.

*Decisions will be entered under Rule 50.*