Estate of Paul Hansen, Deceased, Alison Scott Hansen, Executrix [1] v. Commissioner. Estate of Paul Hansen v. Commissioner
Docket Nos. 2187, 2188, 2215, 2216, 2217, 2218.
United States Tax Court
1945 Tax Ct. Memo LEXIS 286; 4 T.C.M. (CCH) 264; T.C.M. (RIA) 45080; February 27, 1945
S. Ashley Guthrie, Esq., for the petitioners. Charles J. Munz, Esq., for the respondent. STERNHAGEN The Commissioner determined deficiencies in income tax as follows: 1940
1941
Estate of Paul Hansen
$4,757.40
$3,107.66
Paul E. Langdon
704.84
1,574.32
Kenneth V. Hill
694.56
1,529.20
Samuel A. Greeley
5,146.48
3,089.02
Samuel M. Clarke
769.07
1,587.54
Thomas M. Niles
666.80
1,522.59
*287 He determined that "the accounting records of the firm reflect the accrual method of accounting", upon that method computed its income for the periods August 16-December 31, 1940, and the year 1941, as $60,595.68 and $88,796.80, and consequently increased the share of each partner. Two other issues are presented. Findings of Fact On August 15, 1940, Paul Hansen, now deceased, Paul E. Langdon, Kenneth V. Hill, Samuel A. Greeley, Samuel M. Clarke and Thomas M. Niles formed the partnership of Greeley and Hansen to do business at Chicago, Illinois, as consulting hydraulic and sanitary engineers for municipalities throughout the United States. The business had been started in 1914 under the name of Pierce and Greeley. In about 1922, Paul Hansen became a member. In about 1935, Pierce withdrew and the business was conducted as Greeley and Hansen. On August 15, 1940, four new men became partners. In this report the firm before August 16, 1940, is called the old partnership and the firm thereafter is called the new partnership. The work of the partnership consists of (a) the preparation of a general plan to permit municipalities to obtain financing of the project; (b) then the preparation *288 of detailed plans and specifications for contractors' and manufacturers' bids, and (c) supervision and inspection of construction. The fees are sometimes percentages of the cost of construction and sometimes on a per diem or fixed sum basis. The fees were received in installments as the work progressed, the fixed fees on a monthly basis and the percentage fees as the work progressed, computed on an estimate of work done or of construction completed. Usually the fees were not definitely determined until the end of the job when the last payment was made. All the income consisted of fees for personal services. The new partnership filed income tax returns in the First District of Illinois for the period August 16-December 31, 1940, and for the year 1941, on the cash basis. The old partnership also filed income tax returns for 1940 and 1941 on the cash basis. Its predecessors had consistently filed income tax returns on the cash basis. From 1914 until about 1923, there was a method of accounting regularly employed in keeping the books of account of the successive partnerships. Such method was a simple cash method. In about 1923, the method became more formal and two new accounts were *289 set up designated as "Services Billed" and "Work in Proress". No contracts were entered on the books of account and no entry was made of daily services rendered on any job. As the work on any job progressed bills for services were sent to clients either at monthly intervals, as called for by the contracts, or as funds were needed. The amount was either an estimate of the value of the services rendered or a percentage of the estimated cost of construction, and it was credited to "Services Billed" account and debited to accounts receivable. Before closing the books at the end of each year the bookkeeper submitted a list of uncompleted jobs as of December 31 to Greeley, and Greeley, in a few minutes, estimated the probable compensation for services rendered on each job for which no bill had yet been rendered. This figure was an impression rather than a close estimate. Each item or total of Greeley's estimate was entered in the "Work in Progress" account as showing the figure for the work in progress as of the end of the year, and the figure was brought forward in the subsequent year as the figure for the work in progress at the beginning of the subsequent year. The figure for work in *290 progress as of December 31, 1940, was $74,000, and as of December 1, 1941, $54,000. The amount in the account as of the beginning of the 1940 period was $24,200. Except for the above-mentioned amounts, all accounts in the partnership books were kept on a cash basis. The books had no bills payable accounts. At times, when the partnership borrowed money, the books carried a notes payable account. In the partnership income tax returns the "Work in Progress" and "Services Billed" accounts were omitted and income was reported on the cash basis. The income per books and the income per return were as follows: Aug. 16 to Dec. 31, 1940
Calendar Year 1941
Services billed
$127,999.22
$393,897.35
Work in Progress: Beginning
$ 24,200.00
$ 74,000.00
End
74,000.00
49,300.00
54,000.00
20,000.00
Gross income
177,799.22
373,897.35
Operating Expenses:
121,593.03
323,148.88
Personal income tax of Greeley
3,751.88
125,344.91
(1,092.72)
322,056.16
Net income or (loss) per books
$ 52,454.31
$ 51,841.19
Income per return: Aug. 16 to Dec. 31, 1940
Calendar Year 1941
Cash collected on receivables
$118,191.52
$379,268.96
Operating expenses
121,593.03
$323,148.88
Paid to old partnership included in "Other
deductions authorized by law"
9,619.00
332,767.88
Net income or (loss) as reported
($ 3,401.51)
$ 46,501.08
*291 The Commissioner determined that the method of accounting regularly employed in the partnership books of account was "the accrual method of accounting", and made various adjustments, which show that the adjusted partnership income was determined by the Commissioner as follows: Aug. 16 to Dec. 31, 1940
Calendar Year 1941
INCOME
Services billed per books
$127,999.22
$393,897.35
Work in Progress: Beginning
$ 98,816.00
End
98,816.00
52,594.95
46,221.05
226,815.22
347,676.30
Additional Income: * Sale of equipment
1,222.31
Gain from liquidation of notes and accounts
receivable
7,741.12
6,444.12
* Interest received
1,092.72
* Correction of journal entry Dec. 31, 1941
4,400.00
Expenses accrued Dec. 31, 1940 and in-
cluded in expenses paid in 1941
53,589.94
Total Income
$235,778.65
$413,203.08
DEDUCTIONS
Expenses as per books
$125,344.91
$323,148.88
* Income tax of Greeley
3,751.88
Expenses per return
$121,593.03
$323,148.88
Expenses accrued by agent: Wages and salary
32,960.40
Federal Social Security
6,313.06
1,257.40
Sundry expenses
14,316.48
53,589.94
Total deductions
$175,182.97
$324,406.28
Adjusted Income
$ 60,595.68
$ 88,796.80
*292 The adjustments made by the Commissioner to "the accrual basis" which he adopted show that reported income was first adjusted to book income by substituting services billed $127,999.22 and $393,897.35 for $118,191.52 and $379,268.96, and using the book figures in the work in progress account. Then for the book figures in the work in progress account were substituted the figures $98,816, work in progress as of December 31, 1940 and January 1, 1941, and $52,594.95, work in progress as of December 31, 1941. These figures were derived from figures obtained in 1942 from Clarke, one of the partners, at the request of the revenue agent who was then making an examination of the partnership books for 1940 and 1941. The Clarke figures were estimates for work in progress based in part on partnership records, in part *293 on information not at hand at the end of the respective periods, and in part on information not in the books or records of the partnership. On some of the jobs the final amount due had not yet been determined. No uniform method was applied to determine the percentage of completion on each uncompleted job. Additional expenses were added to the book expenses as follows: For the period August 16-December 31, 1940, wages and salary - 32,960.40, Federal Social Security taxes - $6,313.06, and sundry expenses - $14,316.48, totalling $53,589.94, and for the year 1941, Social Security taxes - $1,257.40. The additional expenses accrued in 1940 were restored to income for 1941. The above adjustments were made to reflect income on "the accrual basis" adopted by the Commissioner. In the return of the old partnership for 1941 the entire amount of $9,619, received from the new partnership, was reported as income. Memorandum Opinion STERNHAGEN, Judge: 1. The controversy is one of accounting. The Commissioner refused to recognize the returns of the new partnership, which were made on the cash basis, and determined that the method of accounting regularly employed in keeping the books of the partnership *294 was "the accrual method". The accounts on the books were adjusted to that supposed method, the resulting income was computed, and thus the deficiencies were evolved. The petitioners, members of the partnership, assail the substitution of this so-called "accrual method" for the cash method and say that the cash method is the only method in accordance with the partnership books and therefore under Section 41 is the only method available to either the partnership or the Commissioner for the determination of taxable income. The statute provides (Sec. 41, I.R.C.): The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * * The Commissioner's rejection of the partnership returns is based upon the fact the returns omit the two accounts *295 called "services billed" and "work in progress". The Commissioner treats the services billed account as a record of liabilities of clients which the partnership has a right to collect. But the evidence shows that this is incorrect. The amounts entered in such account were not accrued legal rights to receive. They were mere estimates by the partnership as the jobs progressed of the value of the services rendered. As a rule, the fee for a job was not definitely determined until the last payment was made. The amount entered in the work in progress account at the end of each period was merely. Greeley's "impression", - not even an estimate - of the value of services rendered to December 31 on unfinished jobs for which no bills had been rendered. The Commissioner did not use the figures shown in that account but used estimates made in 1942 by Clarke, one of the partners. The Clarke estimates were to some extent based on records and were the result of some computations, but they were not based on detailed and accurate data nor arrived at by a uniform method of computation. The Clarke estimates made in 1942 were used by the Commissioner, as said in the deficiency notice, "in accordance *296 with the provisions of Section 22 (c) of the Internal Revenue Code". This section provides for the use of inventories where necessary in order to clearly reflect income of any taxpayer. Inventories are used to determine the cost of goods sold where "the production, purchase, or sale of merchandise is an income-producing factor". Reg. 103, Sec. 19.22 (c)-1. All the income of the partnership was derived from personal services; and the production, purchase, or sale of merchandise was not an income-producing factor. Inventories were unnecessary and their use in computing the income of the partnership in application to the work in progress account was incorrect. In the revenue agent's report on which the determination of the Commissioner is based it was stated: If records are kept in a manner to reflect accounts receivable, accounts payable, and inventories, it is considered to represent the accrual method of accounting. The general books of the partnership contain these accounts. Other than the services billed and work in progress accounts, the partnership's books were kept on a cash basis. In order to compute the partnership's income on an accrual basis the *297 Commissioner set up various accrued expense accounts, such as accrued wages and salary, accrued federal social security tax, and sundry and miscellaneous expenses, although such items had not been entered on the partnership's books of account as accruals and were not entered until actually paid in a subsequent taxable period. That the books carried a notes payable account in which entries were made at times when money was borrowed and that the books also carried a receivables account is not determinative that an accrual method of accounting was used. Daily Record Co., 13 B.T.A. 458. Such accounts may come into existence and be recorded on books of account without the slightest effect on income. M. D. Rowe et al., 7 B.T.A. 903. Since substantially all accounts were kept on a cash basis, it was a simple matter for both the old and new partnerships to report income on that basis from the books of account disregarding the memorandum accounts called services billed and work in progress. This clearly reflected income. No uniform method of accounting can be or is prescribed for all taxpayers. Neither a strictly cash nor a conventional accrual system is required. *298 But items of gross income and deduction must be accounted for consistently. Reg. 103, Sec. 19.41-2 and 19.41-3; Mertens Law of Federal Income Taxation, Sec. 12.05. This was done. Even if a few accounts in the books were on an accrual method, "minor deviations from the cash basis are not sufficient to sustain a holding that the accrual basis was used" ( Estate of L. W. Mallory, 44 B.T.A. 249, 258, particularly where a substitute method adopted by the Commissioner was erroneous. Under Section 41, Internal Revenue Code, the taxpayer has the selection of the method of accounting. Huntington Securities Corp. v. Busey, 112 Fed. (2d) 368. Since the partnership computed its net income in accordance with the method of accounting regularly employed by it and had no desire for a change, it was not necessary to secure the consent of the Commissioner. Section 41; Page Oil Co., 41 B.T.A. 952, 958, affirmed, 129 Fed. (2d) 748 (C.C.A. 2d); Reynolds Cattle Co., 31 B.T.A. 206. The determination of the Commissioner that the "accounting records of the firm reflect the accrual method of accounting" was in error and *299 the adjustments made by him to effect a change from the cash to an accrual method were incorrect. 2. A question is presented by the petitioners in respect of the disallowance of an expense deduction of $9,619 for 1941 and the inclusion of $7,741.12 in 1940 income and $6,444.12 in 1941 income. No facts as to the background of this deduction can be found from the evidence. Apparently, the new partnership paid $9,619 to the old partnership for assets and of this the Commissioner took $5,801.35 as the basis of accounts receivable having a book value of $26,122.61. What the book value or the actual value was is not in evidence. Clearly, as the purchase price of assets, the $9,619 was not deductible as an expense. The Commissioner apparently divided the $9,619 into the amounts attributed as cost of the accounts receivable acquired and as cost of the other assets acquired and by this division he arrived at $5,801.35 as the cost basis of accounts receivable having a book value of $26,122.61. Since this $5,801.35 was 22.21 per cent of the $26,122.61 book value of all the accounts, the gain on the realization of any one account was determined by using as the basis for such account the same *300 22.21 per cent of the book value of the account. By this method he included in 1940 income $7,741.12 and in 1941 $6,444.12. The taxpayers assail this, contending that they have included these amounts in the income of the respective years. Since, however, there are no facts in evidence upon which a correct determination could be made or a criticism could be founded of the determination which the Commissioner has made, there is nothing upon which this Court can base findings of fact or reach a conclusion, and the determination must therefore be affirmed. 3. Greeley and Hansen, as members of the old partnership, claim that, because the new partnership concedes that of its deduction of $9,619 the disallowance of $3,817.65 was correct, the old partnership should have this amount subtracted from the $9,619 which was included by it in its income. Apparently the $3,817.65 is the amount which the respondent attributed to the price paid by the new partnership to the old for assets other than accounts receivable. This amount was apparently received by the old partnership as the price of assets. Whether the amount included gain or resulted in loss depends upon the cost to the old partnership *301 of the assets sold. But what the assets cost cannot be found from the evidence. Thus, as in the preceding point, the taxpayers have failed to sustain their claim, and it must be denied. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are embraced in this report: Paul E. Langdon, Kenneth V. Hill, Samuel A. Greeley, Samuel M. Clarke and Thomas M. Niles.↩
*. The items "Sale of Equipment", "Interest Received" and "Correction of Journal Entry Dec. 31, 1941" are conceded by petitioner to be correct. The item "Income Tax of Greeley" was not included in deductions claimed in the partnership return for the period August 16 to December 31, 1940. These items are not adjustments effecting a change from the cash to an accrual basis.↩