APCO Valve Company (formerly Milwaukee Valve Company) v. Commissioner.
APCO Valve Co. v. Commissioner
Docket No. 86948.
United States Tax Court
T.C. Memo 1962-304; 1962 Tax Ct. Memo LEXIS 1; 21 T.C.M. (CCH) 1622; T.C.M. (RIA) 62304; December 31, 1962
Walter J. Rockler, Esq., 120 S. LaSalle St., Chicago, Ill., and Raymond E. Saunders, Esq., for the petitioner. John L. Pedrick, Esq., and Rex A. Guest, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1954 in the amount of $75,866.13. The issue for decision is whether petitioner's opening inventory for the year 1954 should be in the same amount as its closing inventory for 1953 as determined in a prior opinion of this Court, even though its closing inventory for 1954 is valued at an amount higher than such inventory would be if valued by the method used in valuing the closing inventory for 1953 as determined in our prior opinion. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is a corporation which was formerly known as Milwaukee Valve Company. Petitioner was organized under the laws of the State of Wisconsin, and its principal office is in Milwaukee, Wisconsin. *4 Its income tax return for the year 1954 was filed with the district director of internal revenue at Milwaukee, Wisconsin. Although petitioner was formally dissolved on January 12, 1960, under the laws of Wisconsin its corporate existence is continued for the purpose of the filing of this petition in its corporate name. On August 23, 1954, Controls Company of America, a Delaware corporation, acquired all of petitioner's corporate stock. Prior to its dissolution, petitioner's business consisted of manufacturing and selling valves, castings and fittings, and other metal products for residential, commercial, and industrial uses and for use in the heating and oil burning industry. Petitioner has consistently followed an accrual method of accounting for income and expenses. Work-in-process and finished goods inventories are material items in determining petitioner's annual taxable income, and petitioner has consistently used inventories in determining its annual taxable income for filing its income tax returns on the calendar year basis. For at least 15 years prior to January 1, 1953, in accounting for work-in-process and finished goods inventories, petitioner followed a single *5 consistent method of inventory valuation. Inventory was valued at cost or market whichever was lower. In determining the cost of work-in-process and finished goods inventories, however, petitioner followed a standard cost method of accounting (hereinafter sometimes referred to as method 1) under which each item was valued at a predetermined cost based on the cost of raw materials, labor, and allocated overhead that existed at the time petitioner first adopted method 1. The predetermined cost at which finished goods and work-in-process inventory items were valued had remained constant over the years. The correct computation of the value of petitioner's inventories under method 1 as of January 1, 1954 and December 31, 1954 is as follows: Jan. 1,
Dec. 31,
1954
1954
Raw materials and sup-
plies (actual cost)
$ 53,440.95
$ 65,794.82
Finished goods (Stand-
ard cost)
Material
39,625.23
35,738.09
Labor
9,998.07
9,017.28
Burden
12,108.75
10,920.91
Work in process (stand-
ard cost)
Material
54,395.45
71,781.01
Labor
12,212.24
16,115.44
Burden
15,106.18
19,934.33
Total inventories
$196,886.87
$229,301.88
On its Federal income tax return *6 for the calendar year 1954, filed in April 1955, petitioner in computing cost of sales showed an opening inventory as of January 1, 1954 of $318,946.05, computed as follows: Inventory as of December 31,
1953
$196,886.87
Adjustment as of January 1,
1954, of finished goods and
work-in-process inventories
(credited to surplus)
122,059.18
$318,946.05 On this 1954 income tax return petitioner showed an inventory at December 31, 1954, of $379,923.18. The inventory at December 31, 1954, in the amount of $379,923.18 was arrived at by making an adjustment of $150,621.30 to the inventory in the amount of $229,301.88 as originally shown on its books. The adjustment in the amount of $122,059.18 to its opening inventory for 1954 and the adjustment in the amount of $150,621.30 to its closing inventory for that year were made as adjusting entries on its journal for December 1954. The adjustments in the amounts of $122,059.18 to opening inventory for 1954 and $150,621.30 to closing inventory for 1954 were arrived at in the same manner. The computation of the opening and closing 1954 inventories which supported the adjustments made in December 1954 was as follows: Jan. 1, 1954
Dec. 31, 1954
Raw materials and supplies (actual cost)
$ 53,440.95
$ 65,794.82
Finished goods (current cost)
60 percent of the aggregate selling price of finished
goods as of 1/1/54 ($190,434.84 X 60 percent)
114,260.90
60 percent of the aggregate selling price of finished
goods as of 12/31/54 ($178,273.11 X 60 percent)
106,963.87
Ratio of finished goods as determined under current
standards to finished goods as determined under
1938 standards
185.09%
192.12%
($114,260.90 /
($106,963.87 /
$ 61,732.05)
$ 55,676.28)
Work in process (current cost)
Work in process determined under 1938 standards
($81,713.87 X 185.09 percent)
$151,244.20
Work in process determined under 1938 standards
($107,830.78 X 192.12 percent)
$207,164.49
Total inventories
$318,946.05
$379,923.18
*7 (This method of valuing inventories is sometimes hereinafter referred to as method 2.) For 1955 and subsequent years, inventories as reflected on petitioner's books were valued on a current cost method. Arthur Young and Company, a firm of certified public accountants, was retained by Controls of America (then known as A.P. Controls Corporation) after that company acquired petitioner's stock to make an audit of petitioner's books for the year 1954. The accountants of Arthur Young and Company assigned to make the audit of petitioner's books for 1954 and to prepare petitioner's tax returns therefrom were informed that Controls Company of America wished to publish consolidated financial statements with petitioner. The accountants of Arthur Young and Company assigned to work on the audit of petitioner's books for 1954 and the preparation of its tax returns for that year were of the opinion that the method of accounting used by petitioner in valuing its inventory was not consistent with that used by Controls Corporation of America and that a combination of the two would not have given an acceptable consistent financial statement. The adjustment made in petitioner's method of inventory *8 valuation for 1954 was explained in the certificate of the accounting firm of Arthur Young and Company accompanying a financial statement of petitioner for the year 1954 as follows: The cost accounting system of the Company did not provide for the determination of individual unit costs on a current basis. The individual items in the work in process and finished goods inventories at December 31, 1953 and December 31, 1954 were priced at standard costs which for the most part had not been revised for many years and were known to be substantially below current costs. The total of the inventories at standard costs at both dates was adjusted to the basis of the lower of current costs (first-in, first-out) or market, through the use of gross profit ratios, etc. We reviewed the methods used in arriving at the final inventory amounts and are satisfied that such amounts are a reasonable reflection of the inventories at the lower of cost (first-in, first-out) or market. On September 17, 1957, respondent mailed to petitioner a statutory notice of deficiency for its calendar years 1953 and 1954 in which a deficiency of $66,241.50 was determined for the year 1953 and a deficiency of $460.75 *9 for the year 1954. In this notice of deficiency respondent determined that there should be added to petitioner's reported income for the year 1953 as additional income the amount of $122,059.18 designated as "inventory" and in explanation of this adjustment stated as follows: On your return as filed your inventory as of December 31, 1953 was shown in the amount of $196,886.87. It has been determined pursuant to the provisions of Sections 22(c) and 41 or any other Section of the Internal Revenue Code of 1939 that the correct value of your inventory on December 31, 1953 was $318,946.05. Your taxable income is accordingly increased in the amount of $122,059.18. In this statutory notice of deficiency respondent made no inventory adjustment to petitioner's income as reported for its taxable year 1954, the deficiency as determined by respondent for that year resulting from the disallowance of an amount claimed on petitioner's income tax return as repairs on business property and determined by respondent to constitute a capital expenditure. On December 13, 1957, petitioner filed with this Court a petition from the determination of deficiency for the year 1953 as set forth in the notice *10 of deficiency mailed to it on September 17, 1957, but did not seek a redetermination of the deficiency as determined in that notice for the year 1954. In this petition, petitioner insofar as here pertinent assigned the following errors: 4. The determination of tax liability set forth in said notice of deficiency is based upon the following errors: (a) The Commissioner erred in determining that the correct value of the petitioner's closing inventory as of December 31, 1953, was $318,946.05. The provisions of the Internal Revenue Code of 1939 relied on by the Commissioner, namely, Sections 22(c) and 41 or any other Section, are not applicable, and the value shown on the petitioner's tax return in the amount of $196,886.87 is the correct value of the inventory as of December 31, 1953. (b) If it is determined that the correct value of the closing inventory was $318,946.05, then the Commissioner erred in failing to increase correspondingly the value of the petitioner's opening inventory as of January 1, 1953. In this petition, petitioner alleged the following facts in paragraph 5: (a) For at least fifteen years prior to 1953, the petitioner has followed a single consistent method *11 of inventory valuation. Inventory has been valued at cost or market whichever is lower. In determining the cost of work in process and finished goods inventories, the petitioner has followed a standard cost system under which each item has been valued at a predetermined cost based on the cost of raw materials, labor and allocated overhead that existed at the time the petitioner adopted this system. The predetermined cost at which items have been priced has remained constant over the years. (b) The petitioner, in determining the value of the opening and closing inventories for 1953, followed the method of valuation described above. This method of inventory valuation, consistently applied, clearly reflects the actual income of the petitioner for that year. (c) In income tax audits of prior years, the method of inventory valuation followed by the petitioner was reviewed and discussed; nevertheless, this method was not previously challenged by the Commissioner or his representatives. The Commissioner by seeking to compel an involuntary change in method as of December 31, 1953, without allowing a corresponding adjustment as of January 1, 1953, has sought arbitrarily to compel the petitioner *12 to recognize as income in a single year an increase in inventory values that occurred over a period of at least fifteen years which elapsed since the petitioner's introduction of the standard cost method. Respondent on May 8, 1958, filed an answer to this petition in which he admitted the allegation of error contained in paragraph 4(a) of the petition and stated with respect to the allegation of error in paragraph 4(b) as follows: 4.(b) In view of the respondent's admission of error with respect to subparagraph (a) of paragraph 4. of the petition, the allegation of error contained in subparagraph (b) of paragraph 4. of the petition is moot. Respondent admitted the allegations contained in subparagraphs (a), (b), and (c) of paragraph 5 of the petition. On the same date that respondent filed his answer, he filed a motion for judgment on the pleadings in which he requested that this Court make an ultimate finding that the correct value of petitioner's inventory as of December 31, 1953 was $196,886.87, the amount stated on petitioner's 1953 income tax return, and enter a decision pursuant to Rule 50 since petitioner had assigned no error with respect to certain adjustments as made *13 in the statutory notice of deficiency. On August 8, 1958, petitioner filed a memorandum joining with and concurring in respondent's motion for a judgment on the pleadings but objecting to respondent's request for an ultimate finding of fact and contending that in the event this Court made any ultimate findings it should include an ultimate finding in accordance with petitioner's assignment of error contained in paragraph 4(b) of its petition. On August 29, 1958, the memorandum opinion of this Court was filed. This memorandum opinion set forth in full the petition and stated that the answer admitted all the allegations of the petition except 4(d), which paragraph of respondent's answer was quoted in full. This memorandum opinion concludes as follows: The material facts alleged and admitted are adopted as findings of fact and an ultimate fact is found as follows: The correct value of the inventory of petitioner at December 31, 1953, was $196,886.87 as shown in the 1953 income tax return of petitioner. On November 25, 1958, the decision of this Court was entered determining an overpayment in petitioner's income tax for the year 1953 in accordance with an agreed computation under *14 Rule 50, pursuant to the Court's Memorandum Opinion filed August 29, 1958. At hearings before the Committee on Finance of the United States Senate, held on February 25, through February 28, 1958, with respect to H.R. 8381 (the Technical Amendments Act of 1958), William J. Rockler, the attorney representing petitioner in this case, appeared and testified with respect to the proposed amendment to section 481 of the Internal Revenue Code of 1954, entitled, "Adjustments required by changes in method of accounting." On February 27, 1959, pursuant to the provisions of section 29(e) of the Technical Amendments Act of 1958 (Public Law 85-866) petitioner filed a timely election to recompute taxable income for 1954 and subsequent years under method 1 of valuing inventories, under which method taxable income had been computed for 1953 and preceding years. The letter in which petitioner made this election, dated February 23, 1959, stated as follows: Milwaukee Valve Company hereby gives written notice of its election, under the provisions of Section 29(e) of the Technical Amendments Act of 1958, to recompute its taxable income, beginning with the year 1954, under the *15 method of accounting under which taxable income was computed for the year 1953. For the taxable year beginning January 1, 1954 and ending December 31, 1954 Milwaukee Valve Company changed the method of valuing inventories of finished goods and work-in-process. In that year it began to value such inventories at prices which recognized current costs for materials, labor, and overhead. For the preceding taxable year, ending December 31, 1953, Milwaukee Valve Company valued its inventories of finished goods and work-in-process at prices which were developed from costs prevailing in 1938, except that prices for products introduced after 1938 gave some recognition to labor rates at the time of introduction. Pursuant to the above stated election there are submitted herewith amended corporation income tax returns for taxable years ended December 31, 1954, 1955, 1956, and 1957. For each of these years the only change in net income resulting from the change in accounting method is the increase or decrease in cost of goods sold resulting from the revaluing of the opening and closing inventories of finished goods and work-in-process. There is submitted a schedule showing a recomputation *16 of the inventories used in the amended returns. The determination of an amended net loss for the year 1955 results in an increased net operating loss carryback to the year 1953 and an overassessment of taxes for which a claim for refund is filed. The schedule attached to this letter showed a recomputation of inventories on a basis stated to be under the "old standards" for each of the years 1954, 1955, 1956, and 1957. The opening and closing inventories on this basis for the year 1954 are in the amounts heretofore set forth as the correct computation under method 1. The amended income tax return for the year 1954 attached to this letter contained the following statement: Taxpayer has elected under the provisions of Section 29(e) of the Technical Amendments Act of 1958, to recompute its taxable income, beginning with the year 1954, under the method of accounting under which taxable income was computed for the year 1953. Pursuant to the above stated election this amended return has been prepared. The schedules which were filed with the original return are incorporated herein by reference. A schedule showing a recomputation of income for the year 1954 using opening and closing *17 inventories in the amounts as determined under method 1, and deducting a net operating loss carryback based on the amended returns for 1955 and 1956 was also attached to the amended return. There was also attached to this amended return a claim for refund for the year 1954 based on a claimed net operating loss carryback from the years 1955 and 1956 as computed on the amended returns for those years. This claim also referred to the election by petitioner under section 29(e) of the Technical Amendments Act of 1958. On July 22, 1959, petitioner was mailed a letter by the district director of internal revenue enclosing a report of examination of an internal revenue agent covering its taxable years 1953 through 1958, which report proposed a deficiency in petitioner's income tax for the year 1954 in the amount of $57,178.50 and no change with respect to any of the other years. In this revenue agent's report, taxable income as shown on a prior revenue agent's report dated January 4, 1957, was stated to be $120,764.88, and to this prior determined taxable income an adjustment of beginning inventory in the amount of $122,059.18 was made and from the resulting figure a net operating loss carryback *18 from the year 1956 in the amount of $121,077.42 was deducted. The inventory adjustment was computed as follows: Inventory per return, 1-1-54
$318,946.05
Inventory per Tax Court de-
termination 12-31-53
196,886.87
Adjustment
$122,059.18
On February 26, 1960, respondent mailed to petitioner a notice of deficiency in income tax in the amount of $75,866.13, in which the following adjustments were made with the following explanation: Adjustments to Income
Taxable income as disclosed by return
$119,878.82
Unallowable deductions and additional income: (a) Capital expenditures
$ 932.70
(b) Opening inventory
122,059.18
(c) Closing inventory
28,960.63
151,952.51
Total
$271,831.33
Nontaxable income and additional deductions: (d) Depreciation
$ 46.64
(e) Net operating loss deduction
114,100.31
114,146.95
Taxable income as adjusted
$157,684.38
Explanation of Adjustments (a) and (d) These adjustments were previously agreed to by you, and the tax thereon has been assessed. (b) In the computation of the cost of sales on your return for 1954 you claimed a total opening inventory of $318,946.05. This consisted of the *19 amount of $196,886.87 representing the value of your closing inventory as of December 31, 1953 plus an increase of $122,059.18 stated to represent an adjustment as of January 1, 1954 in the value of the finished goods and work-in-process inventories. In the Memorandum Decision dated August 29, 1958 the Tax Court held that the value of your inventory as of December 31, 1953 was $196,886.87. Such amount accordingly represents the value of the opening inventory to be taken into account in computing your cost of sales for 1954. In accordance with the provisions of Section 22(c) it is held that you are not entitled to the claimed adjustment of $122,059.18 and your taxable income for 1954 is accordingly increased in such amount. (c) and (e) On February 27, 1959 you filed a claim for refund for $460.75 based on an additional deduction from 1954 income in regard to a net inventory reduction of $28,562.12 and a net operating loss deduction of $131,413.97. The reduction of $28,562.12 represents a net decrease resulting from the elimination of the aforementioned opening adjustment of $122,059.18 and a reduction of $150,621.30 in the closing 1954 inventory. It is held that, pursuant to the provisions *20 of Section 22(c), the value of the closing inventory on your 1954 return has been understated. Your claimed reduction in value is accordingly denied. It has been determined that the value should be increased in the amount of $28,960.63 and such amount has accordingly been restored to your taxable income. In regard to the net operating loss deduction of $131,413.97, it is held that, in accordance with the provisions of Section 23(s) and Section 122 of the 1939 Code, the net operating loss deduction allowable in the current year is not in excess of $114,100.31. To the extent that the claimed deduction exceeds the amount allowable, the deduction is denied. See schedule of Adjustments and Loss Carry-Backs. The $28,960.63 increase in petitioner's closing inventory for 1954 as set forth in this notice of deficiency was computed as follows: December
31, 1954
Burden
Manufacturing expenses per tax
return Schedule A
$327,042.23
Repairs per tax return
33,505.77
Depreciation per tax return (90
percent)
21,634.55
Taxes per tax return (90 percent)
30,545.06
Total burden
$412,732.61
Direct labor per tax return, Sched-
ule A
$172,938.66
Ratio of burden to direct labor
238.658%
Ratio as applied
238 %
Direct labor in inventory as deter-
mined under Method 1
$ 25,132.72
Amount of burden included in in-
ventory $25,132.72 X 238 percent
$ 59,815.87
Less amount of burden in inventories
under Method 1
30,855.24
Additional burden to be added to in-
ventories
$ 28,960.63
*21 (This computation is sometimes hereinafter referred to as Method 3.) Respondent in answer to the petition herein affirmatively alleged that petitioner is estopped from claiming for its opening inventory of January 1, 1954, an amount other than $196,886.87 because of the Memorandum Opinion of this Court filed on August 29, 1958, in Milwaukee Valve Company, T.C. Memo 1958-164. On October 17, 1961, respondent filed an amendment to answer in which he added to the allegations contained in his original answer the following: That petitioner in its original income tax return for the taxable year 1954 showed a closing inventory value as of December 31, 1954 in the amount of $379,923.18. That the statutory notice of deficiency for the taxable year 1954, mailed to petitioner February 26, 1960, increased the closing inventory figure for the taxable year 1954 by the amount of $28,960.63, or to an amount of $408,883.81, and increased petitioner's taxable income for such year accordingly. That respondent now concedes that the closing inventory adjustment of $28,960.63 was in error and recedes therefrom. That by reason of the concession and elimination of the increase to *22 taxable income acknowledged and admitted herein, the deficiency in tax due from the petitioner for the taxable year 1954 is reduced by the amount of $15,059.53. Opinion The basic facts which give rise to the present controversy are simple. Controls Company of America, after it acquired petitioner's stock in 1954, wished to value petitioner's inventories on the same basis as its own inventories were valued in order that it might prepare a meaningful consolidated profit and loss statement for its shareholders. Petitioner's inventories for many years had been valued on a standard cost basis whereas Controls Company of America's inventories were valued on the basis of current costs. Because of the provisions of section 481 of the Internal Revenue Code of 1954[1] with respect to adjustments required by changes in accounting method which as originally enacted provided for inclusion in a taxpayer's income of those adjustments necessary solely by reason of the change to prevent amounts from being duplicated or omitted, except that adjustments for years prior to those governed by the Internal Revenue Code of 1954 shall not be made, the officers of Controls Company *23 of America saw what they considered to be an opportunity to change the method of petitioner's inventory valuations without causing its taxable income for the year 1954 to be increased by the total increase in actual costs as of 1954 over the standard costs used by petitioner based on 1938 standards. Therefore, petitioner in filing its 1954 income tax return changed its method of valuing inventories from the standard cost basis previously used to a current cost basis, valuing its opening and closing inventories for 1954 on the new basis. *24 Respondent originally adjusted petitioner's income for the year 1953 by increasing its 1953 closing inventory to conform with the opening inventory of 1954 as used by petitioner on its original return for 1954 and issued a statutory notice of deficiency to petitioner for the years 1953 and 1954 on that basis. Petitioner filed a petition with this Court contesting the adjustment as to 1953. The bill which with various changes became the Technical Amendments Act of 1954, was H.R. 8381. This bill as it had been passed by the House of Representatives was referred to the Senate on January 29, 1958. Section 24 of H.R. 8381, as passed by the House of Representatives, proposed an amendment to section 481(a)(2) of the Internal Revenue Code of 1954, which is identical to the amendment of that section as adopted. Hearings were held before the Committee on Finance of the United States Senate on February 25 to 28, 1958, with respect to H.R. 8381, and during the course of these hearings Walter J. Rockler, who is petitioner's attorney in the present case, testified and called specific attention to petitioner's change in method of inventory valuation. [2] The primary concern *25 with the revision in section 481 as proposed in H.R. 8381 and passed by the House of Representatives as evidenced by testimony before the Senate Finance Committee, was with its application to those cases where a taxpayer had already changed its method of accounting in some year from 1954 up to 1958. (S. Rept. No. 1983, 85th Cong., 2d Sess., p. 48 (1958), 1958-3 C.B. 922, 969.) *26 In May 1958 respondent filed an answer to petitioner's petition to this Court seeking a redetermination of its income tax for 1953, in effect conceding error in his increase in petitioner's closing 1953 inventory but making the concession in such a manner as to obtain an opinion of this Court determining petitioner's closing inventory for that year. After enactment of the Technical Amendments Act of 1958 petitioner filed an election pursuant to the provisions of section 29(e) of that Act [3] to recompute its inventories under the method which it has used for the year 1953 and prior years and filed amended returns for its taxable years 1954 through 1957. *27 Respondent had an audit of petitioner's returns for the years 1953 through 1958 made by an internal revenue agent, and on February 26, 1960, issued to petitioner a statutory notice of deficiency in which the income as shown on petitioner's original income tax return for 1954 was adjusted by decreasing its opening inventory to reduce this inventory to that computed under the method used by petitioner for 1953 and prior years and increasing the closing inventory by $28,960.63. In this notice, respondent also denied petitioner's claimed reduction in value of inventories for 1954 based upon valuing such inventories by the method it had used consistently for 1953 and prior years. Respondent contends that section 481 of the Internal Revenue Code of 1954 is not an issue in this case. His primary position is that petitioner is collaterally estopped from using an amount other than $196,886.87 as its opening inventory for 1954 by our decision as to this year in the Milwaukee Valve Company case. Respondent's other contention is that petitioner has failed to prove error in his determination. Petitioner now does not directly contend that respondent committed error *28 in failing to recognize its election under section 29(e) of the Technical Amendments Act of 1958 to use inventories as computed on the method it used for 1953 and prior years but claims that in rejecting this election, respondent has changed petitioner's method of accounting for the year 1954, and, therefore no adjustment should be made for years prior to 1954. Each party relies to some extent on the findings of this Court in our Memorandum Opinion with respect to petitioner's taxable year 1953 that the method of valuing inventories followed by petitioner in the year 1953 clearly reflects the actual income for that year. Petitioner contends that this finding is in substance a holding that the method used by it for 1953 and prior years clearly reflects its income for 1954. The evidence in the record, including our Opinion in the case involving petitioner's taxable income for 1953 indicates that the method petitioner used in valuing inventories for 1953 and prior years, when applied to both opening and closing inventories for 1954, does clearly reflect petitioner's income for this year. The evidence shows no change in the nature of petitioner's business between 1953 and 1954. The *29 method used by petitioner in valuing inventories for the year 1953 had been used by petitioner for 15 prior years without objection by respondent. Where there is a choice of alternative methods of accounting for a material item such as inventories, consistency of treatment can be of great significance in determining whether the method used clearly reflects income. Geometric Stamping Co., 26 T.C. 301, 304 (1956). Cf. Michael Drazen, 34 T.C. 1070 (1960). We recognize, of course, that by valuing its finished goods and in-process inventories under 1938 cost standards, the actual cost of those inventories is understated. However, the only indication that any portion of such understatement is due to increases in costs in the year 1954 as distinguished from being due to increases which had occurred during the years 1938 through 1953 is that in converting its inventories for 1954 from standard costs to current costs, petitioner used a ratio of finished goods as determined under current standards to finished goods as determined under 1938 standards of 185.09 percent for *30 its opening inventory and 192.12 percent for its closing inventory. As respondent points out, the only evidence offered by petitioner to establish the correctness of its valuation of inventories under method 2 was the opinion of the accountant who was tax manager of Arthur Young and Company's Milwaukee office, and this accountant had no independent knowledge that the current cost of petitioner's finished goods as of January 1, 1954, and December 31, 1954, was 60 percent of the selling price of such finished goods. The correctness of the computation is dependent on this percentage being reasonably accurate. This accountant testified that this percentage was arrived at by consultation with petitioner's officers and with consideration of the actual experience of Controls Company of America. Because of the deficiency in proof as to the validity of the 60 percent ratio of costs to sales price, the record is not unmistakably clear that the use of method 2 for the computation of both petitioner's opening and closing inventories for 1954 would reflect clearly its income for that year, but a fair inference from the record is that use of opening and closing inventories so computed in determining *31 petitioner's 1954 taxable income would give a reasonably accurate reflection of petitioner's 1954 income. [4]
It is, however, completely clear that method 2 is a current costs method whereas method 1 is a standard costs method so that by use of an opening inventory computed under method 1 and a closing inventory computed under method 2, petitioner's income for the year 1954 is distorted. If a taxpayer in valuing inventories "is on one method at the beginning of the year and closes with another method, it would be coincidence merely, if his true income is reflected." Lenox Clothes Shops v. Commissioner, 139 F. 2d 56 (C.A. 6, 1943). The evidence here shows that this coincidence did not occur. The distortion is further increased if method 3 is used for determining petitioner's 1954 closing inventory and method 1 for determining *32 its opening inventory. It is clear, therefore, that the justification for respondent's action in determining petitioner's income for 1954 in his notice of deficiency by use of method 1 for determining its opening inventory and method 3 (or if his concession is accepted, method 2) for determining petitioner's closing inventory is that otherwise petitioner has been permitted to initiate a change in its accounting method without making necessary adjustments to prevent amounts from being omitted from income. See Commissioner v. Dwyer, 203 F. 2d 522 (C.A. 2, 1953) affirming a Memorandum Opinion of this Court. Cf. American Can Company, 37 T.C. 198 (1961), on appeal (C.A. 2, April 27, 1962) for discussion of correction of errors. Since the year here involved is 1954, the adjustments required by changes in method of accounting are governed by section 481 of the Internal Revenue Code of 1954. Southeast Equipment Corporation, 33 T.C. 702 (1960), affd. 289 F. 2d 493 (C.A. 6, 1961). A change in the method of valuing inventories *33 from a standard cost basis such as method 1 which had been used by petitioner for 1953 and many prior years to a current cost basis such as method 2 is a change in method of accounting and is not a change in the nature of a correction. Respondent's regulations in effect for the year 1954 with respect to the requirements respecting the adoption of a change of accounting method specifically give as a change requiring consent of respondent a change in the method of valuing inventories.[5] This same provision was in the comparable regulations for a number of prior years. In a number of cases, we have considered a change in method of valuing inventories to be a change in accounting method. See Klein Chocolate Co., 36 T.C. 142 (1961); F. S. Harmon Manufacturing Co., 34 T.C. 316 (1960); and Geometric Stamping Co., supra.
*34 When petitioner filed its original 1954 income tax return valuing its inventories by a current market price method instead of a standard cost method, it made a change in its accounting method, not only without securing the consent of respondent to such change, but also without actually changing the method of keeping its books for the year 1954 except by a correcting year-end adjustment. It did, however, change its method of inventory valuation in keeping its books for years subsequent to 1954. At this juncture, we think it clear that petitioner had initiated a change in its accounting method without securing the consent of respondent to such change or changing its books, and that had respondent refused to approve the change for 1954, such action would have been justified. Michael Drazen, supra. Respondent, however, originally accepted this change by petitioner in accounting method and on September 17, 1957, issued a statutory notice of deficiency to petitioner accepting the change in method as to the year 1954 but adjusting petitioner's closing inventory for the year 1953. Subsequent to this action by respondent section 481 of the Internal Revenue Code *35 of 1954 was amended so as to require the taking into account of those adjustments for years prior to 1954, which would be necessary solely by reason of the change in order to prevent amounts from being omitted where the change was initiated by petitioner. At a time when it was reasonably clear that this amendment to section 481 would be made, respondent admitted error as to the change in the valuation of petitioner's ending inventory for 1953 in such a manner as to attempt to lay a foundation for adjusting petitioner's opening inventory for 1954. At this juncture had petitioner done nothing further, section 481 would clearly have justified an adjustment in petitioner's opening inventory to the extent that an amount resulting solely from this change would otherwise be omitted from income even though the adjustment was with respect to years prior to 1954. However, the increase would not necessarily be in the total amount of the difference in valuation of petitioner's opening inventory under method 1 and method 2, Cf. Commissioner v. Dwyer, supra, and the provisions of section 481(b) of the Internal Revenue Code of 1954 would limit the amount of *36 tax due by petitioner in 1954 because of omissions occasioned by the change in accounting method. Section 29(e) of the Technical Amendments Act of 1958 permitted petitioner to elect to return to its method in use prior to 1954, and petitioner made this election. Respondent refused to recognize the election made by petitioner and mailed to petitioner a notice of deficiency in which petitioner's opening inventory for 1954 was computed under method 1 and its closing inventory for 1954 was computed under method 3. We think it clear that respondent's notice of deficiency, mailed February 26, 1960, did, in fact, reject petitioner's election made pursuant to section 29(e) of the Technical Amendments Act of 1958 to return to the method of valuing inventories used by it prior to the change initiated by it in filing its 1954 return. Although this rejection was not clearly stated as such, it is shown by respondent's denial in the notice of deficiency of petitioner's claimed reduction in inventory as shown on a claim for refund filed by it accompanying the 1954 amended return, which reduction clearly arose from petitioner's return to the method of valuing inventories it had used prior to 1954. *37 Petitioner in filing its petition did not precisely allege error in this denial of its election to return to its prior method of valuing inventories since it apparently preferred to use the changed method it had initiated in its original return for 1954 if it could accomplish this result without its 1954 income being increased by the amount of the difference in its opening inventory for that year as computed under method 1 and the amount thereof as computed under method 2 or 3. In answer to respondent's statement on brief that petitioner has not assigned error in any alleged rejection of its election to return to method 1 in valuing inventory, petitioner states that this is not a fact, and that it is contending that respondent erred in this respect. However, even in answering this statement by respondent, petitioner does not precisely request that its 1954 income be computed with both opening and closing inventories valued under method 1 but rather states that in not recognizing its election, respondent has initiated a change in its accounting method by a change made in the valuing of its closing inventory for 1954. We, therefore, have the situation of both parties preferring method *38 2 for valuation of petitioner's inventories; albeit, petitioner only prefers this method if it can use it without increasing its 1954 taxable income by the $122,059.18 difference between the amount of its opening inventory as computed under method 1 and the amount thereof as computed under method 2. Since petitioner's income for 1954 computed by using method 2 for valuing both petitioner's opening and closing inventories for 1954 is in excess of that computed by valuing both inventories under method 1, respondent apparently prefers method 2 in all events. We think it clear here that petitioner initiated the change in its accounting method. Southeast Equipment Corporation, supra, and Irving Falk, 37 T.C. 1078 (1962), on appeal (C.A. 5, July 30, 1962). We think it equally clear from this record that respondent was in error in rejecting petitioner's election, timely filed pursuant to section 29(e) of the Technical Amendments Act of 1958, to return to the method of valuing inventories used by it prior to 1954, but we do not agree with petitioner that respondent's error in rejecting its election was tantamount to respondent's initiating a change in its accounting *39 method. We think petitioner's assignments of error are sufficiently broad to encompass an assignment that respondent erred in refusing to recognize its election to return to the method of valuing inventories used by it prior to 1954, since error is alleged as to respondent's failure to allow its claim for refund of $460.75, which was specifically based upon the return to its method of valuing inventories used prior to 1954. A substantial portion of respondent's argument is concerned with collateral estoppel. We do not think that doctrine has any application to this case. In the prior case, this Court did hold that the correct value of petitioner's closing inventory for the year 1953 was $196,886.87 and found that the method of inventory valuation used by petitioner for 1953 and prior years consistently applied did clearly reflect petitioner's income for the year 1953. The holding as to the correct value of petitioner's closing 1953 inventory was based on the finding that it was computed on a method consistently applied, not only to petitioner's opening inventory for 1953 but to all inventories for many years prior to 1953. Where a different method of valuing petitioner's closing *40 inventory for 1954 is used as was done in respondent's notice of deficiency in the instant case, such a change in facts has taken place as to make inapplicable the doctrine of collateral estoppel to fix petitioner's 1954 opening inventory at a value of $196,886.87. Commissioner v. Sunnen, 333 U.S. 591 (1948). No such change in facts was involved in Seaboard Commercial Corporation, 28 T.C. 1034 (1957), relied on by respondent in the instant case. While we view the real error by respondent here to be in not recognizing petitioner's election to return to method 1 in valuing its inventories, this error is sufficient to show error in respondent's increasing petitioner's 1954 income by $122,059.18 which he designated in his notice of deficiency as "opening inventory." Since the inclusion of this amount in petitioner's income is the basic error assigned by petitioner in respondent's determination as set forth in his notice of deficiency (other than the adjustment which respondent has now conceded), we hold that respondent erred in increasing petitioner's 1954 income by this amount. Respondent contends that although petitioner assigned error with respect to *41 his computation of its loss carryback from 1956 to 1954, he proved no facts to show such error, and, therefore, this issue should be decided in respondent's favor. As we understand petitioner's position, its only contention that respondent's computation of loss carryback is in error is based on respondent's determination of inventory values for the year 1956 used in determining this loss carryback. Since petitioner has offered no evidence to show that the inventory values used by respondent for the year 1956 were not proper, we sustain respondent's determination as to the amount of the loss carryback from 1956 to 1954 as set forth in his notice of deficiency. Decision will be entered under Rule 50. Footnotes
1. Sec. 481(a), I.R.C. 1954, now provides: (a) General Rule. - In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change") - (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer. Prior to being amended by the Technical Amendments Act of 1958 paragraph (2) of Sec. 481(a) provided as follows: (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply.↩
2. Walter J. Rockler testified as follows: As a result of the combination of provisions in section 24, any taxpayer who was induced by section 481 of the 1954 Code to change his accounting method, with the justified expectation that the income of pre-1954 years would not be taxed, is now to be taxed retroactively on that very income. The ultimate effect is to punish such taxpayers under something which very closely resembles a statutory entrapment in the tax area. I would like to illustrate this result in the actual situation of our client. In 1954 Controls Company of America purchased from unrelated third parties all of the stock of another company, Milwaukee Valve Co., which thereupon became a wholly owned subsidiary. Upon a review of the methods of accounting and reporting of Milwaukee Valve Co., it was determined that the method of inventory valuation theretofore used by Milwaukee Valve for 25 or 30 years was open to objection. In fact, Internal Revenue agents had from time to time challenged the method of inventory valuation without, however, compelling a change of method. In reliance upon section 481 of the Code, the method of inventory valuation was changed. The action was based on the express Code assurance that any accession to surplus attributable to pre-1954 years would not be taxed in later years. If section 24 as proposed should be enacted, this "voluntary" change of method will result in a wholly unanticipated tax on the company, and moreover a tax which will raise only because the company has been lured into a vulnerable position by the provisions of section 481↩ now on the books. * * *
3. Sec. 29(e), Technical Amendments Act of 1958. (e) Election to return to former method of accounting. (1) Election. Any taxpayer who for any taxable year beginning after December 31, 1953, and ending after August 16, 1954, and before the date of enactment of this Act, computed his taxable income under a method of accounting different from the method under which his taxable income for the preceding taxable year was computed, may elect to recompute his taxable income, beginning with the taxable year for which taxable income was computed under such different method of accounting, under the method of accounting under which taxable income was computed for such preceding taxable year. An election under this paragraph shall be made within 6 months after the date of the enactment of this Act, and shall be made in such manner as the Secretary of the Treasury or his delegate may provide. * * *↩
4. It might be noted here that petitioner's income for 1954 computed on the basis of both opening and closing inventories being determined under method 2 exceeds its income computed on the basis of both inventories being determined under method 1 by $32,415.↩
5. Sec. 1.446-1(e)(2)(ii), Income Tax Regs.↩ Examples of changes requiring consent are: A change from the cash receipts and disbursements method to an accrual method, or vice versa; a change involving the method or basis used in the valuation of inventories (see sections 471 and 472 and the regulations thereunder); a change from the cash or accrual method to a long-term contract method, or vice versa (see section 1.451-3); a change involving the adoption, use, or discontinuance of any other specialized method of computing taxable income, such as the crop method; or a change in the treatment of any other items of income or expense, where material.